Daniel E. Macken, J.
Plaintiff, a retail and wholesale seller of gasoline and other petroleum products, was the lessee of a service station located at Lincoln and South Streets in the City of Auburn (hereafter called South Street station) which, in turn, it sublet to one Ockenfels who operated the station. On March 30, 1960 an explosion demolished the station, killing several people and causing extensive property damage resulting in the commencement of numerous actions against the plaintiff.
Plaintiff seeks judgment declaring that the defendants are obliged to defend these actions and assume coverage for the claims therein asserted under a so-called comprehensive general liability policy issued to plaintiff by defendants. The defendants have disclaimed coverage and refuse to defend the actions, asserting that the policy affords no coverage for plaintiff’s liability as lessor of the station and that the complaints do not allege negligence of the plaintiff in the operation of its gasoline and oil business.
*216 With respect to the latter contention, the complaints in the pending actions, to me, seem to allege negligence of this plaintiff in its capacity as lessor only. Plaintiffs, however, in several of the pending actions have served notice upon this plaintiff, that upon the trial of the actions motions will be made to amend the complaints to allege additional claims of negligence on the part of this plaintiff. The defendants concede that the proposed amendments allege negligence of this plaintiff in the operation of its oil business and that, if the motions to amend are granted, they will be obliged to defend the actions and the only issue raised in this connection is whether defendants were obliged to assume defense upon being notified of the proposed amendment or may await the decision of the motions to amend. If they were originally obliged to defend the actions, this question becomes academic.
Defendants’ disclaimer of coverage for plaintiff’s liability as lessor is based upon the fact that the South Street station was not set forth in the “ Description of Hazards ” contained in “ Declarations — Schedule 1 ” of the policy.
The term “ comprehensive ” has reference to the insuring agreements contained on page 2 of the policy by which the defendants obligate themselves “to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death, at any time resulting therefrom (or injury to or destruction of property) sustained by any person and caused by accident ”.
If the defendant wished to exclude any liability from the general coverage of the policy or to limit their liability thereunder in any manner, they were required to do so in clear and unmistakable language. (Mohawk Val. Fuel Co. v. Home Ind. Co., 8 Misc 2d 445, and cases therein cited.) Concededly, the claims being asserted against the plaintiff are for bodily injury, death, and property damage caused by accident. Whether, by the terms of the policy, they are excluded from coverage depends largely upon the interpretation of the language appearing at the head of “ Declarations —- Schedule 1”: “Insurance is afforded with respect to each of the hazards designated below unless the statement 1 Coverage Excluded ’ is entered with respect thereto; absence of any entry with respect to any hazard indicates that there is no exposure under that hazard on the effective date of the policy.” The schedule sets forth five classifications of hazards:
“ (a) Premises — Operations
“(b) Elevators
*217 “(c) Independent Contractors
“ (d) Products (Including Completed Operations)
“(e) Contracts as Defined in Condition 3
Three entries, not including the 'South Street station, appear under “ (a) ”. There are no entries under “ (b) ”, “ (c) ” or “ (e) ” and two entries appear under “ (d) ”.
Defendants in their memorandum take the position that “ there are two ways in which a specific location may not be covered: (1) It may be listed in the declarations page and followed by the words ‘ Coverage Excluded ’, or (2) It may be omitted from the declarations page ”. Plaintiff takes the position that the words ‘ ‘ Insurance is afforded with respect to each of the hazards designated below, unless the statement ‘ Coverage Excluded ’ is entered with respect thereto ’ ’, has reference only to the printed general classifications of hazards. An examination of policies issued by these defendants, found in the record on appeal of Lekas Corp. v. Travelers Ins. Co. (1 A D 2d 15) and Brockba,nk v. Travelers Ins. Co. (12 A D 2d 691) makes it clear that the word “hazard” had reference to the printed classifications appearing in Schedule 1. The language of item 5 of the Declarations on page 1 of this policy would seem to indicate, however, that the word “ hazard ” was also applied to the individual entries typed on Schedule 1 although I think the latter entries might more properly be described as exposures to the printed hazards.
I therefore conclude that coverage might be avoided by inserting the words “ Coverage Excluded” with respect to any of the printed hazards containing no typed entries or by making a typed entry with the words ‘ ‘ Coverage Excluded ”. Such was not done in this instance and defendants’ contention that plaintiff’s liability as lessor of the South Street station was not covered must rest on the provision ‘ ‘ absence of any entry with respect to any hazard indicates that there is no exposure under that hazard on the effective date of the policy ”. Plaintiff contends that this language refers only to a complete absence of entries under any of the printed hazards. I shall assume, however, that it has reference to the omission of a single entry as, in this case, the South Street station. Assuming such to be so, however, the sentence is far from being a clear and unmistakable statement that coverage of such an omitted item is excluded. Its weakness as an exclusory sentence is emphasized by the following definitions of the word “indicate” in Webster’s Third New International Dictionary Unabridged: “To point out or point to or toward with more or less exactness ” “to *218 show the probable presence or existence or nature or course of ” 11 to reveal in a fairly clear way ” “ to show or suggest the probable extent or degree of” “to state or express in a brief or cursory way ” “ to suggest, intimate, hint ”.
That some coverage was anticipated for hazards or exposures not entered in the schedule is apparent from defendants’ concession that a location acquired during the term of the policy would be covered without express notice of its acquisition being given to the defendants although no language of the policy specifically provides for such coverage. It may be noted that defendants’ witness Gruilfoyle, manager of their casualty underwriting department, testified that, in the event a policyholder did not wish coverage for a location acquired during a policy term, to avoid coverage and consequent liability for premium, it would be necessary that the policy be specifically indorsed to exclude the location.
By the provisions of the policy an estimated premium was charged when the policy was issued and the exact amount of the premium was determined by an audit conducted at the conclusion of the policy term. Further evidence that it was contemplated that hazards not stated in the declarations might exist is apparent from the language of Condition 1, appearing on page 2 of the policy, which provides in part: “ The premium bases and rates for the hazards described in the declarations are stated therein. Premium bases and rates for hazards not so described are those applicable in accordance with the manuals in use by the company.” Paragraph 18 of “ Conditions ” appearing on page 3 of the policy is as follows; “ By acceptance of this policy the named insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance.”
I conclude that the failure to list the South Street station constituted a representation that there was no exposure in connection with that station at the inception of the policy. Such a representation in this instance was false. This misrepresentation, however, does not permit the defendants to avoid coverage unless it was material as defined by subdivision 2 of section 149 of the Insurance Law, in that knowledge of the facts would have led the defendants to refuse to issue the policy or at least to assume coverage for that particular station. The defendants assert no such claim in their answer and it is quite apparent *219 that had the station been listed, the defendants would not have refused coverage.
It must be borne in mind that, in conducting an insurance business, the collection of premiums is of at least as much importance to the company as the payment of claims. It seems to me a reasonable construction of the entire policy is that, subject to the specific conditions and exclusions contained in the policy, the company undertook to afford coverage with respect to all of the five classifications of hazards appearing on Declarations — ¡Schedule 1 except with respect to any such classification or exposure thereunder marked “ Coverage Excluded”, and the policyholder was liable for the payment of a premium for any exposure to such hazards whether or not described in Schedule 1. I have arrived at this conclusion from the wording of the policy itself and without reliance on the testimony of plaintiff’s expert witness Kelly.
Assuming the policy to be ambiguous, although I find it difficult to arrive at a reasonable construction other than that indicated, there is evidence dehors the policy supporting the foregoing construction or at least indicating that the defendants considered the policy to be ambiguous. The policy for the year succeeding the explosion (1960-1961), which was delivered to plaintiff before the explosion, contained the following indorsement:
“It is agreed that as of the effective date hereof the policy is amended in the following particulars:
‘ ‘ LIMITATION OF POLICY TO DESIGNATED LOCATION
“It is agreed that the policy applies only to the premises designated below, and operations necessary or incidental thereto.
‘ ‘ Location of Premises:
53 Columbus St., Auburn, 1ST. Y.
30 Garden St., Auburn, N. Y.
13 Seminary Ave., Auburn, 1ST. Y.”
In all other respects the printed portions of this policy are the same as in the policy in effect at the time of the explosion. Clearly, this indorsement accomplishes what defendants now claim was the intent of the previous policy except that it appears to eliminate the conceded coverage of the policy in issue for premises acquired after inception of the policy. Its inclusion in the 1960-1961 policy is substantial evidence to me that the defendants felt that the earlier policy did not exclude an unlisted location from coverage or that the policy was ambiguous in that *220 respect. (Fidelity-Phenix Fire Ins. Co. v. Farm Air Serv., 255 F. 2d 658, 661.)
Upon the audit made in June following expiration of the policy in issue and with knowledge that the explosion had occurred, defendants ’ auditor reported as an additional hazard or exposure the South Street station and an additional premium charge of $20.30 was made. At the same time the auditor reported that another hazard or exposure had been terminated, resulting in a return premium in the same amount as that charged for the South Street station. This report was approved by someone in defendants’ underwriting department at Syracuse and returned to the auditor. Before it could be sent on to the agent with a copy for the insured plaintiff, as was defendants’ custom, it was intercepted by the Syracuse underwriting office because of a company rule that after a loss had occurred, such an additional exposure might not be accepted without approval of the home office. I may here say that an apparent reason for this rule was to permit the defendants to determine whether or not the misrepresentation resulting from failure to list the exposure was material.
Some two years later, based on a so-called “ Supplemental Field Audit Report ” the defendants issued a “ Correction ” eliminating the South Street station from coverage under the 1959-1960 policy and sent plaintiff a check dated August 9, 1962 in the sum of $20.30, being the amount of premium charged to the South Street station following the audit in June, 1960. This check was not signed, but I attach no significance to this obvious oversight except that by retaining the unsigned check, plaintiff may not be said to have thereby acquiesced in the elimination of the station from coverage.
While I do not find it necessary to determine whether the defendants are estopped to deny coverage by reason of their delay of over two years in returning the premium, this circumstance again affords some evidence to me that defendants had difficulty in construing the policy. It is also some evidence to me that at least the auditor and the individual in the underwriting office who approved his report, considered the station covered.
Reference must be made to defendants’ contention that coverage is not afforded because plaintiff did not intend that the South Street station be covered. It appears that throughout its leasing of the South Street station, plaintiff maintained with another insurance company a policy of liability insurance covering the station with 20-40 limits of liability arising out of bodily injury and no property damage coverage. Although I am *221 unable to specifically so find, it may well be that plaintiff was unaware that the defendants’ policy covered the station. Were such the fact, however, it would not deprive the plaintiff of coverage. (Imperial Cas. & Ind. Co. v. Relder, 308 F. 2d 761.) I likewise am unable to find that the plaintiff intended that the station not be covered. If such were the fact, however, there is no evidence that such an intention was communicated to the defendants and under the policy, as I view it, whether or not it was aware of the coverage or intended that the station not be covered, the station was in fact covered and plaintiff was chargeable with a premium for the exposure.
Plaintiff is entitled to judgment with costs declaring: (1) that under the policy here involved plaintiff is insured against liability for the claims asserted against plaintiff in all of the actions heretofore commenced against plaintiff arising from the accident which occurred March 30,1960; (2) that defendants are required to defend said actions on behalf of plaintiff; and (3) that to the extent of the limits of such policy and subject to the provision of the policy with respect to “ other insurance ” the defendants are required to pay any judgments which may be rendered against plaintiff in said actions.
By stipulation plaintiff’s claim for expenses heretofore incurred in defense of the actions has been withdrawn without prejudice in event the parties are unable to resolve that issue.
This memorandum constitutes the decision of the court pursuant to CPLR 4213. Let judgment enter accordingly.