Leonard PRINCE, Plaintiff and Respondent,

v.

UNIVERSAL UNDERWRITERS INSURANCE COMPANY, a corporation, Defendant and Appellant.

No. 8301.

Supreme Court of North Dakota.

May 26, 1966.

Rehearing Denied July 20, 1966.

Freed, Dynes & Malloy, Dickinson, for defendant and appellant.

Greenwood & Swanson, Dickinson, for plaintiff and respondent.

ADAM GEFREH, District Judge.

The defendant has appealed from the order denying a new trial, order denying motion to amend the findings of fact and conclusions of law and order for judgment, and from the judgment awarded to the plaintiff in which the defendant is required to pay the sum of $5,000 for property damage pursuant to coverage provided under a certain insurance policy issued by the defendant, and the sum of $11,025.62 for attorneys' fees and costs.

The plaintiff owns and operates an automobile sales agency, implement business, service station, bulk oil plant, and appliance sales business at Regent, North Dakota. The automobile sales business is operated as a corporate entity under the name of Regent Garage Company, with Leonard Prince the principal stockholder and manager. The other businesses are owned and operated solely by Leonard E. Prince under various designations, such as "Regent Implement Company," "Regent Oil Company," and "Regent Oil Co. - Regent Imp. Co., L. E. Prince, Owner." The principal office and headquarters for all the businesses is located in the garage building of the Regent Garage Company.

Effective June 1, 1957, the defendant Universal Underwriters Insurance Company insured the plaintiff under a commonly referred to "Garage Liability Policy." This policy was renewed each year thereafter up to and including the policy issued effective June 1, 1960, to June 1, 1961.

On July 31, 1960, a fire at the bulk oil storage tanks operated by the plaintiff in Regent, North Dakota, on a leased site located on railroad right of way some blocks from the Regent Garage Company building, caused damages to various property owners adjoining the bulk oil storage tanks. A number of actions were commenced against the plaintiff as a result of this fire which eventually resulted in judgments against Leonard E. Prince, the plaintiff in this action.

Immediately after the fire the defendant was notified of the fire and the possible losses for which the plaintiff may become liable. The insurance company denied liability under its policy, and also refused to defend the several actions that were com-

menced against Leonard E. Prince, which resulted in judgments against him.

The plaintiff commenced this action seeking $5,000, the maximum amount of the property damage coverage under the insurance policy, and the amount of $12,500 for attorneys' fees and costs incurred by the plaintiff in the defense and settlement of actions which the defendant allegedly was obligated to defend under the terms of the policy. The case was tried to the court without a jury, and judgment was rendered in favor of the plaintiff on the coverage issue and for the full amount of attorneys' fees and costs proved at the trial.

The defendant has assigned various specifications of error of law and insufficiency of the evidence and has requested a trial de novo on all the issues.

The main issues on this appeal may be simply stated as follows:

1. Did the insurance policy in question cover the plaintiff's bulk petroleum business; and

2. Are the attorneys' fees and costs awarded properly recoverable under the facts and circumstances of this case?

The insurance policy issued to the plaintiff, Plaintiff's Exhibit 1, is entitled, "Automobile Garage Liability Policy." The named insured is stated as follows:

Regent Garage Company (A corporation) and/or Leonard E. Prince d/b/a Regent Implement Company, Regent, Hettinger County, North Dakota

Under the heading, "Location of all Premises (enter 'same' if same location as insured's Address)," the following typewritten statement appears: "Same and Elsewhere in the State of North Dakota."

Under the heading "Insuring Agreements," the coverages and hazards are defined and, insofar as applicable, provide as follows:

Coverage B—Property Damage Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined.

Definition of Hazards

Division 1—Premises—Operations—Automobiles: The ownership, maintenance or use of the premises for the purpose of an automobile sales agency, repair shop, service station, storage garage or public parking place, and all operations necessary or incidental thereto;

*   *   *

II. Defense, Settlement, Supplementary Payments: With respect to such insurance as is afforded by this policy under coverages A, B and D, the company shall:

(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

*   *   *

III. Definition of Insured: With respect to the insurance under coverages A, B and D the unqualified word "insured" includes the named insured and also includes (1) any partner, employee, *   *   *.

*   *   *

IV. Premises, Elevator, Automobile Defined, Two or More Automobiles:

(a) Premises. The unqualified word "premises" means premises operated by the named insured for the purposes insured hereunder, and includes the ways immediately adjoining.

Attached to the policy are several endorsements, one reading:

Appliance Sales and Repair Endorsement

* * *

It is understood and agreed Division 1 under "Definitions of Hazards" is hereby amended to read as follows:

"The ownership, maintenance or use of the premises for the purpose of an automobile dealer, repair shop, service station, storage garage, public parking place or appliance sales and repair, and all operations necessary or incidental thereto; and the ownership, maintenance or use of any automobile in connection with the above defined operations, and the occasional use for other business purposes and the use for non-business purposes of any automobiles owned by or in charge of the named insured and used principally in the above defined operations."

The original insurance application, Defendant's Exhibit A, and the original insurance policy issued effective June 1, 1957, contained these statements:

Item 5. The named insured is conducting no other business operations at this or any other location not herein designated, except as herein stated:

In the blank space under this item was inserted:

Appliance Sales and Repair

Item. 6. No insurer has cancelled any similar insurance issued to the named insured, nor declined to issue such insurance, during the past year, except as herein stated:

In the blank space under this item was inserted: "No Exceptions."

The policy issued effective June 1, 1960, did not contain Item 5, but the language that was Item 6 in the first policy became Item 5. However, in the blank space under Item 5 in the second policy the same state-ment, "Appliance Sales and Repair" was inserted.

It is the contention of the defendant that the plaintiff operated a bulk petroleum business under the trade name of "Regent Oil Company," and that this was a distinct and separate business from the garage and implement and service station business; that Leonard E. Prince d.b.a. Regent Oil Company is not an insured under the policy, and the operation of the oil company is not included in the definition of "hazard" in the policy; that the policy is clear and unambiguous and cannot be altered or contradicted by extrinsic evidence.

The plaintiff contends that his bulk oil business was integrated with the implement and service station business or an operation necessary or incidental thereto; that it was the intention of the parties to cover this particular business; and that the use of the designation of the named insured "Leonard E. Prince, d/b/a Regent Oil Company" did not serve to limit the coverage or hazards provided under the policy.

■ If a contract is ambiguous and the intention of the parties cannot be ascertained from the writing alone, it is proper to refer to circumstances under which it was made and the matter to which it relates. Section 9–07–12, North Dakota Century Code. Alm Construction Co. v. Vertin, N.D., 118 N.W.2d 737; Delzer Construction Co. v. New Marian Homes Corp., N.D., 117 N.W.2d 851; and Ireland v. Charlesworth, N.D., 98 N.W.2d 224.

■ The coverage provided by the insurance policy is not all clear and unambiguous. The named insured is listed as "Regent Garage Company (A corporation) and/or Leonard E. Prince d/b/a Regent Implement Company." It is conceded that the plaintiff operates an implement business and it is conceded that the implement business is covered under the insurance policy. However, there is no reference of any kind in the insurance policy that the implement business is covered. Under the definition

of hazards the implement business is not mentioned, nor is it mentioned in the indorsement which amends the definition of hazards by the inclusion of "Appliance Sales and Repair." It would be impossible to tell by reference to the policy alone that the implement business is covered. It would also be necessary to resort to extrinsic evidence to determine what business operation would be "necessary or incidental" to any of the named businesses that are specifically covered. It was therefore proper for the trial court to admit evidence that would explain and clarify the policy and to show what the intention of the parties was when the policy was issued.

Defendant has assigned several specifications of insufficiency of the evidence to support the trial court's findings that the bulk oil business was a part of plaintiff's implement business, and that the insurance policy in question covered plaintiff's bulk oil business.

There is ample evidence in the record to show that Leonard E. Prince operated all his businesses as one business, except that separate records were kept for the garage business, which was incorporated. The service station business, implement business, and bulk oil business was operated as one business, although under different trade names. The same employees were engaged in all the businesses. The insurance premium was based on the payroll for the employees engaged in the businesses covered under the policy. The evidence shows that the premium paid by the plaintiff was based on the entire payroll of all of his operations, with the exception of the salary paid to the bulk oil delivery truck driver for the year 1959. It is not clear from the evidence whether this deduction was made in the prior years, or whether it was made in the year 1960. The premiums under this policy are payable in advance based on an estimated payroll, and are then adjusted accordingly after the close of the year based on the actual payroll figures.

Plaintiff's Exhibit 26, a letter to the defendant from the auditors who audited plaintiff's payroll each year, dated November 30, 1960, reads in part:

We have reviewed our file on this risk and find that on our audit of the period 6–1–58/59 a deduction was made covering the earnings of bulk oil tank driver. This is correct since bulk drivers are not normally covered under a garage liability policy.

This statement correctly reflects the normal procedure inasmuch as the bulk truck driver would normally be covered under the truck's liability policy, and the evidence shows that the plaintiff did have a separate liability policy covering the bulk oil truck. Insofar as the amount of premium paid or to be paid is concerned, plaintiff's premium was based on the entire payroll of all of his employees regardless of where they worked, since they worked where they were needed in the business.

The policy does not limit the premises insured, but describes the premises generally. It can only be inferred that all the premises used by the insured in connection with his business are covered.

The defendant contends that the plaintiff's oil business was not covered because the business was not designated under the named insured and that only Leonard E. Prince d.b.a. Regent Implement Company is covered. As already indicated, the designation of the named insured does not reflect what risks are covered under the policy, since the implement business is not referred to in the definition of hazards. In the original application, Defendant's Exhibit A, the named insured is listed as "Regent Garage Co. Inc." It is apparent that the policy was based on other information not contained in the original application.

It is a well established principle of law that any ambiguity or reasonable doubt as to the meaning of a policy will

be construed strictly against the insurer and favorably to the insured. Tennefos v. Guarantee Mutual Life Co., N.D., 136 N.W.2d 155; Adams v. Bartel, 129 N.W.2d 755; and Conlin v. Dakota Fire Insurance Co., N.D., 126 N.W.2d 421.

A New York case, Connor Oil Company v. Travelers Insurance Co., 46 Misc.2d 215, 259 N.Y.S.2d 421, deals with an almost identical policy and very similar factual situation as in this case. In the *Connor Oil Company* case the insured operated a service station and was the lessor of another service station located in another part of the same city. An explosion and fire occurred at the leased-out service station. The insurance company denied liability and refused to defend. The insurance company some time after the accident attempted to refund a part of the premium collected based on the leased-out service station. The insurance company contended that the leased-out service station was not covered since it was not set forth in the "Description of Hazards" contained in "Declaration–Schedule 1" of the policy.

The court in the *Connor Oil Company* case stated:

If the defendant wished to exclude any liability from the general coverage of the policy or to limit their liability thereunder in any manner, they were required to do so in clear and unmistakable language.

Very similar language is stated in Globe Indemnity Company v. Modern Auto Repair and Reconstruction Company, Mo.App., 285 S.W. 753.

■ The evidence shows that the defendant insurance company had received Survey Reports and Insurance Review Reports through its agent, Mr. Harris. It also received annual audit reports through its auditors. The defendant was well informed concerning the plaintiff's business operations, and therefore is chargeable with knowledge of the plaintiff's business operations. If the defendant wished to lim-

it its liability it could have done so by an endorsement to the policy.

■ If the language of a policy is ambiguous and will reasonably support an interpretation, which will impose liability, as well as one which will not, the former interpretation will be adopted. Schmitt v. Paramount Fire Insurance Co., N.D., 92 N.W.2d 177; also Freese v. St. Paul Mercury Indemnity Co., Mo.App., 252 S.W. 2d 653.

The original application and original policy issued contained Item 5 which has already been referred to which stated:

The named insured is conducting no other business operations at this or any other location not herein designated, except as herein stated:

to which the statement "Appliance Sales and Repair" was inserted. This is a representation that all of the plaintiff's businesses are covered except those indicated. Since appliance sales might have been considered excluded under the definition of hazards and not covered, this exception was noted in the application, and in the policy was specifically covered by an endorsement to the policy.

■ The defendant in this case admits that although the policy issued is used primarily to cover garage businesses, it is used to cover other businesses, and in this case it is admitted that the policy covered plaintiff's implement business and sales and appliance business. Where a garage liability insurance policy is used by an insurer to cover businesses other than a garage business by endorsement or other modification of the policy and where several businesses are so included, and where the policy recites that the insured does not conduct any other business operations not designated in the policy, the policy becomes a comprehensive liability insurance policy to cover all of an insured's business operations within the area covered by the policy except those specifically excluded by en-

dorsement. As we view the policy and the evidence dehors the policy we agree with the construction placed upon it by the trial court's holding that it covered all of the plaintiff's business operations including the bulk oil business.

■ We have reviewed all the specifications of insufficiency of the evidence assigned and find no error in the trial court's findings and conclusions.

Another issue raised on this appeal is whether the attorneys' fees allowed by the trial court are proper. The defendant acknowledges that it would be liable for reasonable attorneys' fees if the policy coverage extended to the bulk oil business. It contends, however, that the amount allowed is not reasonable in view of the policy limits.

The record shows the fees and expenses resulted from extended litigation, including two appeals to this court. It is argued that the fees were unreasonable for the services rendered, but even if reasonable, the principal contention is that it is not reasonable to charge the full amount of these fees and expenses to the defendant, since the maximum property damage liability under the policy is only $5,000.

Under the terms of the policy the defendant was obligated to defend any suit against the insured arising out of covered hazards. The evidence shows that the defendant was requested to defend the several actions that resulted from the fire, and was requested several times to pay the limits of its coverage in connection with the settlement of the judgments against the plaintiff.

■ Failure to defend was a breach of its obligation under the policy. The general rule is that refusal to defend an insured under a liability policy is a breach of the insurance contract which renders the insurer liable to the insured to the extent of the insured's costs and expenses incurred in defending the actions. In 22 Am. Jur.2d, Damages, Sec. 166, p. 235, the rule is stated as follows:

"It is generally held that where the wrongful act of the defendant has involved the plaintiff in litigation with others or placed him in such relation with others as makes it necessary to incur expense to protect his interest, such costs and expenses, including attorneys' fees, should be treated as the legal consequences of the original wrongful act and may be recovered as damages. In order to recover attorneys' fees under this principle, the plaintiff must show: (1) that the plaintiff had become involved in a legal dispute either because of a breach of contract by the defendant or because of defendant's tortious conduct; (2) that the dispute was with a third party—not with the defendant; and (3) that the plaintiff incurred attorneys' fees connected with that dispute. If the attorneys' fees were incurred as a result of a breach of contract between plaintiff and defendant, the defendant will be deemed to have contemplated that his breach might cause plaintiff to seek legal services in his dispute with the third party."

In Comunale v. Traders & General Insurance Company, 50 Cal.2d 654, 328 P.2d 198, 68 A.L.R.2d 883, the court held that refusal to defend is a breach of contract and the measure of damages is that provided by statute for a breach of contract, stating:

"An insurer who denies coverage does so at its own risk, and, although its position may not have been entirely groundless, if the denial is found to be wrongful it is liable for the full amount which will compensate the insured for all the detriment caused by the insurer's breach of the express and implied obligations of the contract. Certainly an insurer who not only rejected a reasonable offer of settlement but also wrongfully refused to defend should be in no better position than if it had assumed the defense and then declined to settle. The insurer should not be permitted to profit by its own wrong."

Section 32–03–09, N.D.C.C., provides:

For the breach of an obligation arising from contract, the measure of damages, except when otherwise expressly provided by the laws of this state, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby or which in the ordinary course of things would be likely to result therefrom. * * *

In Mannheimer Bros. v. Kansas Casualty & Surety Co., 149 Minn. 482, 184 N.W. 189, the Minnesota court considered this same issue. In that case the policy limits were $5,000 and judgments against the insured resulted in excess of $12,000. The insurer argued that the costs and attorneys' fees incurred by the insured in defending the actions should be prorated and the insurer only required to pay five-twelfths of the total expenses. The Minnesota court, in rejecting the argument, held:

The insurance contract obligated defendant to defend all actions brought against plaintiff, on claims for damages resulting from the operation of the insured truck, and we find no qualification limiting its obligation in that respect to the extent of its own interests in the litigation. The duty created by the contract was to conduct the whole defense, and if necessary to vindicate the rights of the insured to prosecute an appeal to the Supreme Court. The undertaking is indivisible, and the failure to respond thereto also indivisible, exposing defendant to all necessary costs which plaintiff incurred in doing that which defendant had undertaken but refused to do.

A similar argument was also rejected in Humboldt Trust & Savings Bank v. Fidelity & Casualty Co. of N. Y., 255 Iowa 524, 122 N.W.2d 358, where the bank carried a bond against liability as to embezzlement, robberies, forgeries, etc., and forgeries were discovered in excess of $50,000, but the liability under the bond was limited to $2,500 for each forgery. The defendant bonding company contended that it should only be liable for court costs and attorneys' fees to the extent of the proportionate share to which it is liable under the bond as compared with the full amount of the forgery checks. The court held:

We hold this is an erroneous interpretation of the provisions of the bond. If appellee is sued it must defend itself. Whether the suit is for $2500 or for $10,000, the attorney's fees and court costs involved would be the same amount. There is no basis for reduction in the amount for which the bonding company is held responsible.

An analogous situation would be the case where claims, some of which fall within the policy coverage and some without the policy coverage, are defended against. The rule for wrongful refusal to defend such an action is stated in § 1460, Insurance, 29A Am.Jur., p. 573:

However, the liability insurer is liable to the insured for all his expenses in defending an action against him based upon claims falling both within and without policy coverage, where the insurer has failed to defend the action notwithstanding a policy provision requiring the insurer to defend actions on claims covered by the policy.

A footnote to this section refers to annotations in 41 A.L.R.2d 434. In this annotation three cases are cited: Christian v. Royal Ins. Co., 185 Minn. 180, 240 N.W. 365; Maryland Cas. Co. v. Moritz, Tex. Civ.App., 138 S.W.2d 1095; and Globe Nav. Co. v. Maryland Cas. Co., 39 Wash. 299, 81 P. 826.

Following the discussion of these cases on page 438, this comment is made:

It may be pointed out that although all of the cases discussed above support the

proposition that the insurer is liable for *all* expenses incurred by the insured in defending the multiple-claim action, only the Globe Navigation Company decision, supra, embodies an express judicial rejection of an insurer's claim that defense expenses should be allocated, with resulting liability of the insurer limited to expenses incurred in defending claims within policy coverage. It is clear that, as in the Globe Navigation Company case, precise allocation of expenses in this sort of situation would, as a practical matter, be extremely difficult. And the comment may be made that allocation, if ever feasible, should be made only where the insurer brings forth clear evidence of the allocability of specific expenses; the insurer, having breached its contract to defend, should be charged with a heavy burden of proof of even partial freedom from liability for harm to the insured which ostensibly flowed from the breach.

We see no reason why the rule in the cases cited should not apply in this case. The fact that the claims were considerably in excess of the coverage provided under the policy did not automatically obligate the plaintiff to engage counsel to protect his interest on the possible excess liability over coverage. The defendant under the insurance contract had a duty to defend all actions against the plaintiff regardless of the amount involved. In Cadwallader v. New Amsterdam Casualty Co., 396 Pa. 582, 152 A.2d 484, 72 A.L.R.2d 1242, the court stated:

It is clear that where a claim potentially may become one which is within the scope of the policy, the insurance company's refusal to defend at the outset of the controversy is a decision it makes at its own peril.

It is also contended that the attorneys' fees allowed by the trial court are unreasonable. The rule is well established that the insurer, in case of an unjustified refusal to defend, is liable for insured's reasonable and necessary expenses incurred in the defense of the action or actions brought against him.

The record shows that the plaintiff had to defend four different actions which resulted in two different trials, two appeals to the Supreme Court, numerous hearings on motions, and a number of discovery proceedings. Plaintiff's exhibit 27 which was received in evidence contains a detailed summary of all the legal services rendered to the plaintiff between August 1, 1960, and December 31, 1964, totaling $10,981.52. This total included $911.52 for expenses for transcript fees, depositions, telephone calls and travel expenses. There was no testimony offered by the defendant to the effect that the services were not rendered or that the hourly or daily fee charged for the services was unreasonable. The plaintiff accepted the statement and had paid $4,500 on the account at the time of the trial in this action. The trial court found the fees and expenses reasonable and necessarily incurred.

This court has held that:

In arriving at what is a reasonable attorney fee in each case, the court should consider the character of the services rendered by the attorney, the results which the attorney obtained for his client, the customary fee charged for such services, and the ability and skill of the attorney rendering the services.

Morton County Board of Park Commissioners v. Wetsch, N.D., 136 N.W.2d 158.

In Mannheimer Bros. v. Kansas Casualty and Surety Co., supra, the court stated:

* * * it appears that after defendant had declined to conduct the defense to the action plaintiff employed an attorney of prominence and high standing who took charge of the litigation and conducted it with ability to a final conclusion. He

subsequently presented his bill for $1,500, which plaintiff paid without question. There was no direct evidence that the services were in fact of that value. But we think, and so hold, that the fact that the charge was made and promptly acquiesced in and paid by the client is some evidence that the amount was reasonable, and in the absence of fraud or collusion, sufficient upon which to base a finding of reasonableness.

Considering the amount of litigation, the complex issue involved, the duration over which the litigation extended, we cannot say that the fees charged and determined as reasonable by the trial court are unreasonable.

The defendant has also assigned as error the trial court's denial of its motion to amend the findings of fact, conclusions of law and order for judgment, contending that the findings of fact and conclusions of law are not in conformity with the findings and conclusions set forth in the court's memorandum opinion. We have disposed of the questions of fact in this case and have determined that the judgment must be affirmed. Therefore, the question raised by this motion is moot.

Since the motion for a new trial was based on the same grounds urged in the appeal from the judgment, our reasons stated in affirming the judgment would also apply to the order denying the motion for a new trial.

The judgment of the district court and orders denying a new trial and motion to amend the findings of fact and conclusions of law and order for judgment are, therefore, affirmed.

TEIGEN, C. J., and ERICKSTAD, KNUDSON and STRUTZ, JJ., concur.

MURRAY, J., not having been a member of the Court at the time of submission of this case, did not participate.