NODAK MUTUAL INSURANCE COMPANY, a corporation, Plaintiff/Appellee,

v.

Richard LOEFFLER, Defendant/Appellant.

Civ. No. 9049.

Supreme Court of North Dakota.

Dec. 19, 1974.

See also, N.D., 225 N.W.2d 286.

Degnan, McElroy, Lamb, Camrud & Maddock, Grand Forks, for defendant/appellant.

Letnes & Marshall, Grand Forks, for plaintiff/appellee.

ERICKSTAD, Chief Justice.

This is an appeal by Richard Loeffler from a declaratory judgment entered January 1, 1974, in Pembina County District Court. The district court determined that the plaintiff and appellee, Nodak Mutual Insurance Company, hereinafter Nodak, owed to Loeffler no contractual obligation, and released Nodak from all responsibility with respect to a certain automobile accident which occurred on June 9, 1972, in which Richard was involved.

The essential question in this case is whether Richard was insured by Nodak on June 9, 1972, the date of the accident. To understand the relative positions of the parties, it is necessary to trace certain facts preceding the accident of June 9, 1972, and to relate these facts to an insurance contract issued by Nodak to Bernard Loeffler, Richard's father.

Bernard purchased his first automobile policy from Nodak in 1954. He was thereafter at all times pertinent to this case insured by Nodak. Nodak asserts that the Automaster provisions of Bernard's policy No. 29454, which were in force on June 9, 1972, became effective January 1, 1971.

In 1971, Richard completed his military duty and returned home to Pembina, North Dakota. On April 8 of that year he began living at the home of his parents, Bernard and Yvonne Loeffler. At this time he was twenty years old and unmarried.

Richard acquired a 1966 Pontiac GTO automobile on April 12, 1971, and applied to Nodak for automobile insurance for this car on April 13. He received a policy from Nodak which was canceled on October 12, 1971. He subsequently traded his 1966

GTO for a 1964 Buick on November 11, 1971. He continued driving the Buick until May 22, 1972, at which time he traded it in, and received title to a 1972 Mercury, the car involved in the accident of June 9, 1972. Between the time of the trade for the Mercury and the accident, specifically on May 29, 1972, Richard became twenty-one years of age. On June 19, 1972, Richard acquired an insurance policy on the Mercury from Nodak.

With these facts established, we may turn to a discussion of the contentions of the parties, and a determination of the issues.

Richard contends that he was covered by the insurance policy issued by Nodak because at the time he acquired the Mercury on May 22, 1972, he was a dependent relative of the named insured, Bernard Loeffler, and under the newly acquired automobile clause of the named insured's policy the newly acquired Mercury was insured for thirty days, and since the accident occurred on June 9, 1972, the thirty-day coverage had not expired.

He asserts that he was a dependent relative within the terms of the policy because he was under the age of twenty-one at the time he acquired the Mercury, notwithstanding that he became twenty-one years of age prior to the accident out of which claims against him have arisen, because the thirty days had not expired on the date of the accident.

A dependent relative under the policy is defined as "an unmarried resident of the named insured's household who is under the age of 21 and related to the named insured by blood, marriage, or adoption, or a person to whom the named insured stands in loco parentis."

The insured is defined as including:

"a) the named insured; and

"b) if the named insured is a person or persons, also includes

"1) . . .

"2) any resident of the named insured's household;

.　　.　　.　　.　　.

The pertinent provisions of the policy relating to newly acquired automobiles reads as follows:

"*Newly Acquired Automobile means an automobile, ownership of which is acquired by the named insured if*

"a) it replaces an automobile owned by the named insured and covered by this policy and the named insured notifies the Company within six months following the date of its delivery to him; or

"b) it is an additional automobile and

"1) the named insured notifies the Company during the current policy period or within 30 days after the date of delivery, of his election to make this and no other policy issued by the Company applicable to such automobile and

"2) the Company insures all personal vehicles owned by the named insured.

"*If the named insured is a person or persons, and if during the policy period such named insured owns a personal vehicle covered by this policy such insurance as is afforded by this policy with respect to a newly acquired automobile also applies to a personal vehicle acquired by a dependent relative of the named insured if*:

"a) *the dependent relative acquiring the personal vehicle does not currently own a personal vehicle,*

"b) *notice is given to the Company within 30 days of its delivery,*

"c) *the Company insures all personal vehicles owned by the named insured.*" [Emphasis added.]

Nodak seems to contend that because Richard owned an automobile subsequent to January 1, 1971, the effective date of the Automaster policy and because he thereafter secured insurance on an automobile

which he owned, that notwithstanding that he later acquired another automobile, to wit, the Mercury, and owned it for less than thirty days at the time the accident occurred, the Mercury was not covered by his father's policy.

■ Because insurance policies must be liberally construed when the terms are ambiguous in favor of the insured and against the insurance company which wrote the policy, we construe the policy in the instant case to provide coverage for Richard and the Mercury automobile on the 9th of June, 1972.

■ It is our view that Richard and his Mercury were both covered under the newly acquired automobile provisions of the policy on the date of the accident, June 9, 1972, since he was a dependent relative on May 22, 1972, the day he acquired the Mercury, and that acquisition automatically put into effect thirty days of insurance which did not expire prior to the accident, notwithstanding that he became twenty-one years of age before the accident.

■ We conclude that the prohibition upon a dependent relative currently owning a personal vehicle relates to the effective date of the policy and we consider that to be January 1, 1971, the date that the Automaster policy went into effect. On that date Richard did not own a personal vehicle.

■ The requirement that notice be given within thirty days of its delivery we construe to mean within thirty days of the acquisition of any vehicle, not just the first vehicle acquired after the issuance of the policy. That requirement was complied with when Richard secured a policy on the Mercury within thirty days of its acquisition, to wit, on June 19, 1972.

Since Nodak has conceded that the company insured all personal vehicles owned by the named insured, that requirement constitutes no impediment in the way of coverage in this case.

■ A further contention made by Nodak is that Richard is excluded from coverage under his father's policy under the definition of "resident." That provision reads:

"Resident or Reside—When used with reference to the named insured's household, means bodily presence in such household and an intention to continue to dwell therein. However, the named insured's unmarried and unemancipated children, who do not own personal vehicles, are deemed to be residents of his household while away from his household attending school, *but resident does not include (a) any person nor his spouse who owns a personal vehicle,* (b) any boarder, (c) any roomer, nor (d) any guest." [Emphasis added.] .

It is our view that the specific provisions defining a dependent relative and those relating to coverage of a newly acquired automobile prevail over the provision defining a resident.

What we have said herein is consistent with what we have said in many other decisions.

In Adams v. Bartel, 129 N.W.2d 755 at pages 757–758 (N.D.1964), we said:

"In construing the terms of an automobile insurance policy, it must be kept in mind that the public has an interest in having automobiles covered by liability insurance. Quaderer v. Integrity Mutual Ins. Co., 263 Minn. 383, 116 N.W.2d 605. It is also a well-settled rule of construction that any ambiguous terms of. an insurance policy are to be construed in favor of the insured and against the insurer who is charged with having chosen the language of the policy."

See also, Syllabus 2 of *Adams, supra.*

The issue in *Adams* was whether certain language in the newly acquired automobile section of the policy required that an insured own more than one car to have an additional newly acquired automobile covered under the policy. The language in question read, "or the company insures all automobiles owned by the named insured."

It was argued that one must own a fleet of automobiles to be eligible for coverage under that terminology. In holding to the contrary, this Court quoted with approval from a Minnesota decision involving similar language and a similar issue.

"The apparent purpose sought to be achieved by defendant in the sale of this policy was to insure plaintiff against all risks arising out of the operation of the automobile described in the policy and, in addition, any automobile he acquired to replace it, or acquires as an added automobile where defendant is the insurer of all his family automobiles. The policy is obviously designed to meet the liability insurance needs of today's two- or more-car families who customarily trade in and replace family automobiles quite frequently. Surely it can also be said that this type of automatic insurance coverage was designed to enable insurance companies, such as defendant, to sell all of the automobile liability insurance needed by a two-car family." Quaderer v. Integrity Mutual Insurance Company, 263 Minn. 383, 116 N.W.2d 605, at pages 608–609 (1962).

Although the provisions of the policy in the instant case are different from the provisions of the policies in *Adams* and *Quaderer*, we believe that the objectives of the respective insurance companies were similar, and accordingly we hold Nodak in the instant case to a similar responsibility.

█ Similarly significant is what we said in a more recent decision of our Court.

"It is a well established principle of law that any ambiguity or reasonable doubt as to the meaning of a policy will be construed strictly against the insurer and favorably to the insured. Tennefos v. Guarantee Mutual Life Co., N.D., 136 N.W.2d 155; Adams v. Bartel, 129 N.W.2d 755; and Conlin v. Dakota Fire Insurance Co., N.D., 126 N.W.2d 421.

"If the language of a policy is ambiguous and will reasonably support an interpretation, which will impose liability, as well as one which will not, the former interpretation will be adopted. Schmitt v. Paramount Fire Insurance Co., N.D., 92 N.W.2d 177; also Freese v. St. Paul Mercury Indemnity Co., Mo.App., 252 S.W.2d 653." Prince v. Universal Underwriters Insurance Co., 143 N.W.2d 708, at 713–714 (N.D.1966).

Should it be thought that we have not given sufficient weight to Appleman, Insurance Law and Practice, § 7482, at page 226 of the pocket parts, to the effect that the definition of any word or phrase in a policy is controlling, it should be noted that we do not deny this principle but find it of little aid to Nodak in this case.

If ordinary persons are to purchase automobile insurance policies, and no one can escape the necessity of purchasing such policies today, the policies should be written in such language that ordinary persons can understand them and know what is covered and what is not. Therefore, when the language is ambiguous it must be construed in favor of the purchaser of the insurance and against the insurance company.

Accordingly, for reasons stated in this opinion, the judgment of the trial court is reversed and the case is remanded with instructions to the trial court to enter judgment in favor of Richard Loeffler.

VOGEL, JOHNSON, PAULSON and KNUDSON, JJ., concur.