Mary BRABENDER, Plaintiff–Appellant,

v.

NORTHERN ASSURANCE COMPANY OF AMERICA, Defendant–Appellee.

No. 942, Docket 94–7750.

United States Court of Appeals, Second Circuit.

Argued March 7, 1995.

Decided Sept. 8, 1995.

**270**

Louis J. Castellano, Jr., Garden City, NY, for plaintiff-appellant.

Joseph C. Scibilia, Deegan & Scibilia, Hempstead, NY, for defendant-appellee.

Before: MAHONEY, WALKER, and CALABRESI, Circuit Judges.

WALKER, Circuit Judge:

Plaintiff Mary Brabender ("Brabender") brought this declaratory judgment action against defendant Northern Assurance Company of America ("Northern") seeking a determination that she is covered for an automobile accident under three insurance policies issued by defendant. Plaintiff appeals from an order of the United States District Court for the Eastern District of New York (Thomas C. Platt, *District Judge*) denying summary judgment in plaintiff's favor and granting defendant's cross-motion for summary judgment. Brabender argues on appeal that Northern is estopped from denying coverage under its Homeowner's Policy and that the term "your use" in the automobile insurance policy, referring to plaintiff's use of an automobile, encompasses physical operation by plaintiff's employee acting under plaintiff's direction.

For the reasons that follow, we reverse the judgment of the district court in part.

## BACKGROUND

In May of 1992, Mary Brabender lived in East Northport, Long Island with her husband Rudolph, their six-year-old son Paul, and their daughter Mary Ellen. Georgina Ahlbrand, a part-time nanny for Paul, also resided with the family. Mary and Rudolph Brabender were covered under three insurance policies issued by Northern: a Personal Automobile Insurance Policy ("Automobile Policy"), a Homeowner's Policy, and a Personal Protector Endorsement which provided umbrella coverage ("Umbrella Policy"). Mary Ellen and Ahlbrand each had separate insurance coverage for their automobiles, carried by Progressive Insurance Company and Prudential Insurance Company respectively.

On May 25, 1992, Mary Brabender asked Ahlbrand to bring Paul to a nail salon the following day so that Brabender could be with her son before attending a town meeting that evening. The next afternoon, as Ahlbrand and Paul were leaving to meet Brabender, Ahlbrand discovered that her car would not start. Mary Ellen agreed to let Ahlbrand use her car for the errand. Re-

grettably, while driving Paul back from the nail salon Ahlbrand collided with one Brosseau, another motorist. Paul sustained serious injuries in the accident.

Paul, by his father Rudolph Brabender, filed suit in the Supreme Court of Suffolk County for damages resulting from the accident. Named as defendants were Brosseau, Ahlbrand, Mary Ellen, and Brabender, the plaintiff in this case. After Northern disclaimed coverage of Brabender, she filed the instant action seeking a declaratory judgment that she was covered under all three of the policies issued by Northern. In November, 1993, the case was removed to federal court and both parties subsequently cross-moved for summary judgment. On July 8, 1994, the district court denied plaintiff's motion and granted defendant's motion. Plaintiff appeals.

## DISCUSSION

On appeal, Brabender contends that the district court erred in finding that the accident was not covered under the Homeowner's Policy, the Automobile Policy, or the Umbrella Policy. Although we agree with the district court that the Homeowner's Policy does not provide coverage, we reverse as to the Automobile Policy and the Umbrella Policy.

### I. The Homeowner's Policy

■ Coverage E of the Homeowner's Policy states that Northern will provide a legal defense and pay up to its liability limit for damages for which the insured is legally liable "because of bodily injury or property damage caused by an occurrence to which this coverage applies." Under one exclusion, coverage does not apply to "bodily injury or property damage ... arising out of: (1) the ownership, maintenance, use, loading or unloading of motor vehicles." The plain language of this exclusion makes clear that Paul's injuries, which were caused by an automobile accident, are not covered by the Homeowner's Policy.

Brabender does not contest the applicability of this exclusion; rather, she argues that Northern should be estopped from denying coverage because of its failure adequately to disclaim liability. Insurance companies wishing to disclaim liability for bodily injury arising out of a motor vehicle accident are required under New York law to "give written notice as soon as is reasonably possible of such disclaimer." N.Y.Ins.Law § 3420(d). While Northern explicitly disclaimed coverage under the Automobile and Umbrella policies, it did not do so with respect to the Homeowner's Policy until after this suit was commenced. Plaintiff contends that this latter disclaimer was untimely, and that as a result Northern is obligated to defend and indemnify plaintiff under this policy. *See generally Albert J. Schiff Assocs. v. Flack,* 51 N.Y.2d 692, 698–700, 435 N.Y.S.2d 972, 974–76, 417 N.E.2d 84 (1980) (explaining that an insurer may be unable to deny coverage due to estoppel or waiver).

We do not believe that Northern's disclaimer as to the Homeowner's Policy was either inadequate or untimely. Northern was first informed of Paul Brabender's claims in a letter from Paul's attorney dated August 14, 1992. That letter did not mention the Homeowner's Policy; rather, it named only the Automobile Policy and the Umbrella Policy and made a claim against Northern for "excess coverage to the primary insurance afforded to Mary Ellen Brabender." Plaintiff first made a claim under the Homeowner's Policy when she served her complaint on the defendant, at which time Northern promptly disclaimed coverage. Given that the Homeowner's Policy clearly excluded coverage and that Northern had no reason to suspect a claim under it, we find that Northern complied with § 3420(d)'s requirement that it disclaim "as soon as is reasonably possible." Accordingly, the district court correctly denied coverage under the Homeowner's Policy.

### II. The Automobile Policy

■ Determining whether the Automobile Policy covers the accident in question involves interpretation of several related provisions. The Automobile Policy's broad coverage provision provides that Northern will "pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes le-

gally responsible because of an auto accident" and settle or defend against suits seeking such damages. Without more, this language, fairly read, seems to cover Mary Brabender with respect to the accident in question since Paul is seeking to hold her legally responsible under a respondeat superior theory for injuries he received in a car accident.

This does not settle the matter, however. Exclusion B of the Automobile Policy states that coverage is not provided for "the ownership, maintenance or use of . . . [a]ny vehicle, other than 'your covered auto,' which is . . . owned by any family member." Because the accident in this case arose out of the use of Mary Ellen Brabender's car—a car which was owned by a family member and not the Automobile Policy's "covered auto"—this exclusion seems to deny coverage in this case. There is an exception to Exclusion B, though, which provides that "this exclusion (B.3.) does not apply to *your maintenance or use* of any vehicle which is . . . owned by a 'family member'" (emphasis added). Brabender's argument is that the term "your . . . use" in this exception is not limited to physical operation of the car by the insured; it includes physical operation by the insured's employee, in this case Ahlbrand, at the direction of and for the purposes of the insured.

In rejecting this argument, the district court noted that the terms "you" and "your" are defined in the Automobile Policy to refer only to the named insured and the named insured's spouse, and does not include agents of the named insured. Thus, the district court concluded, an agent's use of a family member's automobile does not fall within the exemption to Exclusion B. This reasoning reflects a misunderstanding of plaintiff's argument. Brabender's position is not that "your" includes the insured's agent, but rather that she was in fact "using" the car when the accident occurred.

This position is not without some support in New York caselaw. When interpreting N.Y. Vehicle & Traffic Law § 59, which imposes liability on a car's owner for negligent operation of the car "by any person legally using or operating" it with permission, the New York Court of Appeals has held that a person can "use" a car even though not actually driving it. *Arcara v. Moresse,* 258 N.Y. 211, 213–14, 179 N.E. 389, 389 (1932) (Nephew of the car's owner was still "using" the car even though he had turned the wheel over to his friend.); *see also Grant v. Knepper,* 245 N.Y. 158, 165, 156 N.E. 650, 652 (1927) (Truck driver "did not abandon the car or its use when he surrendered to another the guidance of the wheel.").

In the insurance contract context, several courts have held that a person may "operate" a vehicle even if another is behind the wheel. *See* G. Couch, Cyclopedia of Insurance Law Second 45:45 (Rev.Ed.1981) (describing as the majority view that "actual physical driving or manual control of the automobile is not necessary to constitute 'operation' of the vehicle by the insured"). For example, in *Neel v. Indemnity Ins. Co. of North America,* 122 N.J.L. 560, 6 A.2d 722 (1939), the New Jersey Supreme Court held that a customer was "operating" a car for the purposes of an automobile dealer's insurance policy when the customer's son test-drove the car alone at the father's request. *Id.,* 6 A.2d at 724. To the extent that "use" of a car, denoting "employment for some purpose of the user," *Indemnity Ins. Co. of N. Am. v. Metropolitan Casualty Ins. Co.,* 33 N.J. 507, 166 A.2d 355, 358 (1960), is broader than "operation," these cases provide authority for Brabender's contention that she was "using" the car when Ahlbrand took her son to visit her at her request.

On the other hand, in none of the cases cited above was the term "use" (or "operate") given quite as broad a meaning as Brabender advocates in this case. In *Neel,* the customer specifically requested that his son drive the particular car at issue for the purpose of evaluating its fitness for purchase. *Neel,* 6 A.2d at 723. In *Arcara,* the court found that since the owner's nephew had exclusive permission to use the car, had driven it for the duration of the trip, and was in the passenger's seat at the time of the accident, he was "still the master of the ship." *Arcara,* 258 N.Y. at 213–14, 179 N.E. at 389 (quotations omitted). Here, in contrast, the plaintiff neither told Ahlbrand which car to drive nor was she present herself. A number of lower

state court cases suggest that, in these circumstances, Brabender was not "using" the car. *See, e.g., Electric Ins. Co. v. Boutelle,* 122 A.D.2d 332, 332, 504 N.Y.S.2d 577, 578–79 (1986) ("In the common meaning of the phrase 'using [the] covered vehicle', some purposeful exercise of control is required by the person claiming to be covered under the policy.").

Neither the contract itself nor any other evidence submitted by the parties permits us to resolve the meaning and scope of the term "your ... use." *See generally Newin Corp. v. Hartford Accident & Indem. Co.,* 62 N.Y.2d 916, 919, 479 N.Y.S.2d 3, 5, 467 N.E.2d 887, 889 (1984) ("While the rights and obligations of parties under insurance contracts should be determined by the specific language of the policies, if the language of the policy is susceptible of two reasonable meanings, the parties may submit extrinsic evidence of their intent at the time of contracting." (citations omitted)). Both constructions advocated by the parties are equally reasonable. It is plausible that Northern intended to cover the actions of employees acting at the insured's behest under its automobile policies and may have factored the attendant risks into its premium calculations. However, it is equally plausible, especially in light of the fact that both Ahlbrand and Mary Ellen carried separate insurance, that the Automobile Policy was intended to cover Mary Ellen's car only if the plaintiff herself drove it. After considering the evidence submitted in support of both positions, we are unable to resolve the ambiguity.

In an insurance contract, "where there is ambiguity as to the existence of coverage, doubt must be resolved in favor of the insured and against the insurer." *Lavanant v. General Accident Ins. Co. of Am.,* 79 N.Y.2d 623, 629, 584 N.Y.S.2d 744, 747, 595 N.E.2d 819, 822 (1992). This rule is particularly applicable where, as here, the ambiguity is contained within an exclusion clause, *see Breed v. Insurance Co. of N. Am.,* 46 N.Y.2d 351, 353, 413 N.Y.S.2d 352, 354, 385 N.E.2d 1280, 1282 (1978), and the insured had little or no input into the terms of the agreement, *cf. United States Fire Ins. Co. v. General Reinsurance Corp.,* 949 F.2d 569, 574 (2d Cir.1991) (noting that "the touchstone for applying" this rule of construction is "the insured's lack of sophistication"). *See Sea Ins. Co. v. Westchester Fire Ins. Co.,* 51 F.3d 22, 26 & n. 4 (2d Cir.1995). Northern certainly could have defined the term "use" or specified whether coverage extends to agents and employees of the insured. Because it did not, and because we cannot conclude as a matter of law that "[the insurer's] interpretation is the only fair construction of the policy language at issue," *Kula v. State Farm Fire & Casualty Co.,* 212 A.D.2d 16, 628 N.Y.S.2d 988, 990 (1995), we construe the term "your use" in Brabender's favor and hold that the accident in question was covered by the Automobile Policy. *See Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.,* 34 N.Y.2d 356, 361, 357 N.Y.S.2d 705, 708, 314 N.E.2d 37, 39 (1974).

We note that this result can be more efficiently accommodated in the market place for insurance than the contrary one. Sophisticated insurers are in a better position to learn of this decision and renegotiate the terms of coverage than are policy holders who, if we were to deny coverage, would likely be unaware that they are not covered under circumstances similar to those in this case until such circumstances befall them.

Accordingly, we reverse the judgment of the district court as to this point and direct that plaintiff's summary judgment motion be granted in relevant part.

III. The Umbrella Policy

The district court, in granting summary judgment in favor of Northern, concluded that the Umbrella Policy did not provide coverage since it is "not applicable absent affirmative coverage" under the Homeowner's or Automobile Policies. We agree. The Umbrella Policy excludes coverage for "personal injury or property damage arising out of the ownership ... [or] use ... of an automobile which is: owned; furnished; or available; for the regular use of ... your relatives." Although this exclusion plainly encompasses the accident in question, the exclusion does not apply "if the liability is covered by underlying insurance." In light

of our holding that the accident is covered by the Automobile Policy, we reverse the judgment of the district court as to the Umbrella Policy and direct that plaintiff's summary judgment motion be granted in relevant part.

## CONCLUSION

For the reasons stated above, we affirm the district court's holding as to the Homeowner's Policy and reverse as to the Automobile and Umbrella Policies with directions to enter partial summary judgment in favor of the plaintiff.