[683 NYS2d 483]

HERTZ CORPORATION, Respondent, v GOVERNMENT EMPLOYEES INSURANCE COMPANY, Appellant, et al., Defendants.

First Department, December 1, 1998

---

## APPEARANCES OF COUNSEL

*Joel M. Simon* of counsel, New York City (*Smith, Mazure, Director, Wilkins, Young, Yagerman & Tarallo, P. C.,* attorneys), for respondent.

*E. Richard Rimmels, Jr.,* of counsel (*Montfort, Healy, McGuire & Salley,* attorneys), for appellant.

## OPINION OF THE COURT

WILLIAMS, J.

On August 7, 1990, Lois Giles and her aunt, Pecola Stringer, rented a van from the Hertz Corporation for 10 days in order to transport family members to a family reunion in Georgia. At the Hertz rental location on West 77th Street in Manhattan, it was determined that the rental would be placed on Ms. Giles's credit card since Ms. Stringer's credit card limit had been reached. At the time of the rental, Ms. Giles had decided that she would not be able to attend the reunion and so advised the Hertz representative. She further advised the representative that she wished to list two authorized additional drivers on the rental agreement, Ms. Stringer and William Brundage. Since Mr. Brundage was not physically present, she was told that he could not be listed as an additional driver, hence only Ms. Stringer was listed. Both Giles and Stringer signed the agreement in their respective capacities.

After renting the van, Ms. Giles went to work and Ms. Stringer picked up family members Brundage, her husband James Stringer, Ernest Baker and Susie Baker and they set out on the trip to Georgia. Mr. Brundage took the wheel shortly thereafter and, while driving on the New Jersey Turnpike, turned his head to retrieve a soda from a cooler. At this point, the van hit the shoulder of the road, flipped into the air for a distance of approximately 19 feet, slid on its roof for another 62 feet, hit the guardrail on the left shoulder of the road, spun and mounted the guardrail, then slid for another 45 feet before finally coming to rest on its roof. The two passengers who were ejected from the vehicle, James Stringer and Susie Baker, died at the scene. Ms. Stringer and Ernest Baker were critically

injured, and the driver, Mr. Brundage, was taken to the hospital, treated and released.

Pecola Stringer, Ernest Baker, and the Estates of James Stringer and Susie Baker brought an action in Supreme Court, Bronx County, against Brundage and Hertz. Hertz entered into a settlement with the plaintiffs that was allocated among them as follows: Pecola Stringer—$1,100,000; Ernest Baker—$25,000; the Estate of James Stringer—$25,000; and the Estate of Susie Baker—$250,000.

Prior to the settlement, Hertz sought to coordinate the settlement by including the various insurance carriers involved. Ms. Stringer's insurance carrier, the Empire Insurance Group, contributed $150,000, which included a $50,000 combined single limit for bodily injury and a $50,000/$100,000 death benefit. However, Ms. Giles's insurer, defendant Government Employees Insurance Company (GEICO), refused to participate in the defense of the lawsuit or to contribute to the settlement, disclaiming coverage on the ground that the injuries did not arise from the ownership, maintenance or use of the vehicle by Ms. Giles. Upon GEICO's refusal, Hertz, as owner of the vehicle, paid the balance of the settlements.

In this action, initiated in Supreme Court, New York County, Hertz moved for summary judgment seeking from GEICO the maximum bodily injury benefit under the Gileses' policy, $300,000, plus the maximum supplemental death benefit, $100,000, as well as interest and GEICO's proportional share of Hertz's expenses in defending the underlying personal injury action. Justice Kapnick granted Hertz's motion, relying on *Brabender v Northern Assur. Co.* (65 F3d 269) in reasoning that the injuries incurred resulted from Giles's "use" of the vehicle and that she had "personal control" of it for the purposes for which it was rented, that pursuant to its policy, GEICO was obligated to cover Giles, its insured, and that, therefore, Hertz was entitled to indemnification from GEICO for its settlement costs in excess of its liability pursuant to the rental agreement, which was limited to the New Jersey statutory minimum insurance requirement of $15,000/$30,000. Justice Kapnick rejected GEICO's contention that Hertz's settlement with Pecola Stringer was a voluntary overpayment and that GEICO was therefore absolved from liability, holding that *Morris v Snappy Car Rental* (84 NY2d 21), which recognized the validity of excess indemnity clauses in car rental agreements, was inapplicable to this case, having been decided two years after the settlement of the underlying Bronx action. Justice

Kapnick concluded that GEICO's policy rendered it liable in the amount of $400,000 and that GEICO was liable for interest on the principal amount ·plus a proportional share of the defense costs of the underlying Bronx action.

The principal issue raised by this appeal is whether Lois Giles is legally responsible for the operation or "use" of the Hertz vehicle in question, despite her absence from the vehicle at the time of the accident, thereby creating liability in her insurer GEICO for the indemnification of Hertz. If such liability is established, also at issue is whether GEICO may be held liable for contribution to Hertz's alleged voluntary settlements with the accident victims.

It is unquestioned that Hertz, as owner of the vehicle, was liable pursuant to Vehicle and Traffic Law § 388 (1): "Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner."

The Hertz rental agreement provides that:

"(a) Hertz will indemnify, hold harmless, and defend You and any Authorized Operators FROM AND AGAINST LIABILITY TO THIRD PARTIES, EXCLUDING ANY OF YOUR OR ANY AUTHORIZED OPERATOR'S FAMILY MEMBERS RELATED BY BLOOD, MARRIAGE OR ADOPTION, RESIDING WITH YOU OR THEM. For bodily injury and property damage the limits of this protection, including owner's liability, are the same as the minimum limits required by the automobile financial responsibility law of the jurisdiction in which the accident occurred* * * *

"(b) You and all Authorized Operators will indemnify and hold Hertz its agents and employees harmless from and against any loss, liability and expense in excess of the limits or beyond the scope of the protection provided for above, arising from the use or possession of the car by You or any Authorized Operators or with Your, his or her permission."

The relevant provisions of the GEICO policy issued to the Giles family provide bodily injury coverage in the amount of $300,000 per person/$300,000 per occurrence. It classifies the Hertz van as a "non-owned" vehicle, i.e., "an automobile * * * not owned by or furnished for the regular use of either you [the insured] or a relative". The coverage provided for such a vehicle is as follows:

---

* The New Jersey insurance minimum was $15,000/$30,000.

"1. you [the insured] and your relatives when using a private passenger auto or trailer. Such use must be with the permission, or reasonably believe to be with the permission, of the owner and within the scope of that permission;

"2. a person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an insured under 1 above * * *

"LOSSES WE WILL PAY FOR YOU * * *

"we will pay damages which an *insured* becomes legally obligated to pay because of:

"1. bodily injury, sustained by a person * * * arising out of the ownership, maintenance or use * * * of the owned auto or an non-owned auto. We will defend any suit for damages payable under the terms of this policy even if the claim or suit is groundless. We may investigate and settle any claim or suit.

"LIMITS OF LIABILITY * * *

"4. We will provide supplemental limits of liability of $50,000 if a bodily injury results in the death of any one person in any one accident and subject to the limit for any one person, $100,000 for bodily injury that results in the death of two or more persons in any one accident.

"These limits of liability will be reduced as follows:

"(a) For the death of one person, the $50,000 limit shall be reduced by any amount paid to or on behalf of that person under the Bodily Injury Liability coverage of this policy

"(b) For the death of two or more persons, and subject to the limitations in (a) above, the $100,000 limit will be reduced by any amounts paid to or on behalf of those persons under the Bodily Injury Liability coverage of this policy."

It is our view that, pursuant to the express terms of the indemnity clause in the Hertz rental agreement, Ms. Giles was liable to Hertz for costs incurred in excess of the statutory minimum arising from bodily injury associated with her use of the rental vehicle. We disagree with the view that *Morris v Snappy Car Rental* (84 NY2d 21, *supra),* which upholds the validity of such indemnity clauses in car rental agreements, is inapplicable here due to the fact that this decision postdated the settlement of the underlying case. The common-law principle at the heart of *Morris*, that indemnification agreements are enforceable unless they purport to indemnify for damages resulting from the intentional causation of harm, has

been noted in earlier cases (*see, Austro v Niagara Mohawk Power Corp.*, 66 NY2d 674, 676; *Public Serv. Mut. Ins. Co. v Goldfarb*, 53 NY2d 392, 400; *Ciofalo v Vic Tanney Gyms*, 10 NY2d 294, 296-298) and as such may be applied here (*see, Gurnee v Aetna Life & Cas. Co.*, 55 NY2d 184, *cert denied* 459 US 837; *James v Liberty Lines*, 97 AD2d 749).

We agree with the view that the complained-of injuries arose out of Ms. Giles's "use" of a non-owned vehicle. "Use" is a term of art in automobile insurance policies to be understood as follows: "The words 'arising out of' the ownership, maintenance, or use of a motor vehicle, as used in an automobile liability insurance policy, are not words of narrow and specific limitation, but are broad, general, and comprehensive terms effecting broad coverage, ordinarily understood to mean 'originating from' or 'growing out of' or 'flowing from' * * * The terms 'arising out of' have sometimes been said to mean 'incident to, or having connection with' the use of an automobile. In determining whether the act that caused a bodily injury arose out of the use of a motor vehicle within the coverage of a motor vehicle liability policy, the court must take into account the totality of circumstances surrounding or leading to the accident." (7 Am Jur 2d, Automobile Insurance, § 161.) "The term 'use' is the general catchall of the insuring clause designed and construed to include all proper use of the vehicle not falling within one of the [other] terms of definition." (70 NY Jur 2d, Insurance, § 1654.)

"The 'use' of an automobile goes beyond the direct, mechanical control thereof, and extends to a person who, under the circumstances, has the right and power to control its movement" (7 Am Jur 2d, Automobile Insurance, § 92).

*BATS, Inc. v Shikuma* (1 Haw App 231, 617 P2d 575) illustrates the above principles and bears similarity to the case at bar. The issue in *BATS* was whether the insured was "using" the vehicle within the meaning of his insurance policy. The insured had rented a van for the purpose of helping his friend move to a new residence. The friend could not rent the van himself because he had a restricted driver's license. After the move was completed, the insured and his friend agreed that the friend would drop off the insured at his home, keep the van overnight and return it the next day to the rental agency. On the way back to his new residence, the friend was involved in an accident. He had no automobile liability coverage. The rental agency brought an action against the insured and recovered damages for the van, costs and attorneys' fees.

The insured then brought an action against the insurer. The Hawaii Circuit Court granted the insured summary judgment on the basis that the term "use" in the policy was ambiguous and construed the policy against its drafter. The Hawaii Intermediate Court of Appeals affirmed, but found that the meaning of the term "use" was clear. The latter court noted that courts previously considering the issue had looked at two factors, (1) whether the vehicle was under the supervision and control of the insured, and (2) whether the vehicle was operated to serve a purpose of the insured; however, it declined to address the question of whether both factors had to be present. It found that the friend was acting on behalf of the insured at the time of the accident and that the insured was exercising sufficient supervision and control of the vehicle to have been "using" it at the time of the accident; he need not have been continually directing the operation of the van. The conditions placed upon the use of the van in terms of the agreement regarding the van's return to the rental agency constituted sufficient supervision and control over said use. In addition, as renter of the van, the insured had the right to its supervision and control. The agreement included the purpose of the van's use, authorized a specific individual, the friend, to carry out that purpose, and placed specific conditions upon carrying out the purpose, including the designation of a particular route to be taken.

In the case at bar, significant elements of both *BATS* factors are also present. While Ms. Giles, who, as the renter of the van, had the right to supervision and control, was not present in the van or continually directing its operation, there was an agreement with Ms. Stringer and the others to use the van for the purpose she intended, i.e., to assure her family members transport to the family reunion. Moreover, she specifically authorized Ms. Stringer, with Mr. Brundage's assistance, to operate the van to carry out that purpose, thereby entrusting them with her authority over the van. Thus, she was using the van for a specific purpose and she exercised control over the use of the van for that purpose (*see, Brabender v Northern Assur. Co.,* 65 F3d 269, *supra* [2d Cir 1995]; *Electric Ins. Co. v Boutelle,* 122 AD2d 332; *BATS, Inc. v Shikuma, supra*).

Finally, as noted by the Supreme Court, the GEICO policy may be reasonably read to support the view that use by Giles resulted in the accident and injuries, since the policy fails to define "use". Thus, the principle of *Lavanant v General Acc. Ins. Co.* (79 NY2d 623, 629) may be invoked; an ambiguity in an insurance policy must be resolved against the insurer and in favor of the insured.

Inasmuch as GEICO's liability here derives from Giles's liability under the excess indemnity clause of the rental agreement, and as Vehicle and Traffic Law § 388 clearly obligates Hertz, as owner of the vehicle, to make payment in any case (*see, Allstate Ins. Co. v Travelers Ins. Co.*, 39 NY2d 784; *MVAIC v Continental Natl. Am. Group Co.*, 35 NY2d 260), we must consider the question of GEICO's liability in light of its allegation that Hertz voluntarily settled the injured parties' claims in amounts well in excess of the limits of its liability as set forth in the rental agreement.

We find that since GEICO was timely apprised of the action and the settlement efforts and declined to participate in the defense of the lawsuit or to contribute to the settlement, under the circumstances, Hertz's settlement of the personal injury action was not voluntary and GEICO, therefore, cannot be absolved from liability for its share of the settlement amount (*see, General Acc. Ins. Co. v United States Fid. & Guar. Ins. Co.*, 193 AD2d 135, 137; *Mid-City Shopping Ctr. v Consolidated Mut. Ins. Co.*, 35 AD2d 1053).

On the issue of GEICO's responsibility for a proportional share of defense costs in the underlying personal injury action, we find ample basis for charging GEICO with such liability in *Sanabria v American Home Assur. Co.* (113 AD2d 193, 197, *revd on other grounds* 68 NY2d 866), which speaks to circumstances closely analogous to those at bar: "Where an excess insurer is liable to indemnify in part, either because the amount of the judgment or settlement exceeds the limits of the primary policy or * * * the excess insurer may be liable for a portion of the legal fees." In addition, there is contractual authority for GEICO's liability in that Giles's policy provides that GEICO will: "defend any suit for damages payable under the terms of this policy even if the claim or suit is groundless".

Accordingly, the order of Supreme Court, New York County (Barbara Kapnick, J.), entered on or about July 31, 1997, which, *inter alia*, granted plaintiff's motion for summary judgment in the sum of $400,000 and directed GEICO to pay its proportionate share of plaintiff's litigation expenses in defending the underlying personal injury action, the issue of the amount of GEICO's share of such expenses to be severed and determined at an assessment thereof, should be affirmed, without costs.

MILONAS, J. P., NARDELLI and MAZZARELLI, JJ., concur.

Order, Supreme Court, New York County, entered on or about July 31, 1997, affirmed, without costs.