■ RAYMOND CORPORATION et al., Appellants, v NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Respondent. [775 NYS2d 102]—

Mugglin, J. Appeal from an order of the Supreme Court (Dowd, J.), entered November 20, 2002 in Chenango County, which, inter alia, granted defendant's motion for summary judgment dismissing the complaint.

Plaintiffs instituted this action seeking a declaratory judgment that a general liability insurance policy issued to plaintiff Raymond Corporation by defendant provided coverage to plaintiff Arbor Handling Services, Inc. as a named insured. In its answer, defendant asserted a counterclaim seeking a declaration that Arbor was not an additional insured. At the completion of discovery, plaintiffs and defendant moved for summary judgment. Supreme Court denied plaintiffs' motion and granted defendant's motion, holding that Raymond's policy of insurance did not cover Arbor as an additional insured under the circumstances. Plaintiffs appeal.

The following facts are undisputed. Arbor, one of Raymond's vendors, entered into a contract to sell to J.T. Ryerson & Sons two new Raymond sideloaders* intended to be installed and

---

* A sideloader is a forklift (with the forks on the side) that runs on rails installed in the aisles of warehouses.

operated in Ryerson's new warehouse facility. Since the facility would be completed prior to the availability of the sideloaders, the contract additionally obligated Arbor to obtain two rental sideloaders for Ryerson until the new sideloaders could be delivered. Arbor located one rental sideloader and later agreed to "support," as if it were its own, any Raymond sideloader rented by Ryerson. Ryerson subsequently rented a Raymond sideloader from a company in Chicago, Illinois, and Arbor sent two service technicians to install it. Although they assembled it, they did not properly modify the guide rollers, which caused the unit to become unsteady when operated. As a result, during the first use of the sideloader, Ryerson's employee suffered serious head and brain injuries when knocked out of the operator compartment. Raymond and Arbor settled the employee's personal injury action by contributing $6 million. To satisfy its $3 million share of the settlement, Raymond looked to the general liability insurance policy issued by defendant claiming coverage for Arbor as an additional insured pursuant to the terms of endorsement 5 of the policy. Despite defendant's dispute of Raymond's claim in this regard, it agreed to jointly fund Raymond's $3 million share of the settlement, leaving the coverage issues to be resolved in this declaratory judgment action.

The first issue on this appeal is whether the policy of insurance issued by defendant provides coverage to Raymond for injuries to a third party resulting from the malfeasance of Arbor, an additional insured under the policy. The vendor endorsement (number 5) contained in the policy of insurance provides: " 'Who is An Insured' is amended to include as an Insured any person or organization (referred to below as 'vendor') shown in the schedule, but only with respect to 'Bodily Injury' or 'Property Damage' arising out of 'Your Products' shown in the schedule which are distributed, sold, repaired, serviced, demonstrated, installed or rented to others in the regular course of the vendors [*sic*] business, subject to the following additional provisions: . . . ." What causative factor triggers the endorsement's coverage depends on the meaning of the key language "arising out of." Plaintiffs argue that the phrase should be construed broadly so as to include bodily injuries that a vendor's negligent installation or service causes. Defendant, on the other hand, posits that the endorsement contemplates coverage for only those injuries that result from a defect in the product itself.

"Generally, the courts bear the responsibility of determining the rights or obligations of parties under insurance contracts based on the specific language of the policies" (*State of New*

*York v Home Indem. Co.*, 66 NY2d 669, 671 [1985] [citations omitted]; *see Stasack v Capital Dist. Physicians' Health Plan*, 290 AD2d 866, 866 [2002]). "[I]n interpreting an insurance policy, its unambiguous provisions must be given their plain and ordinary meanings" (*Demopoulous v New York Cent. Mut. Fire Ins. Co.*, 280 AD2d 855, 856 [2001]). When interpreting automobile exclusion clauses, courts in New York have deemed the words "arising out of" to be "broad, general, comprehensive terms ordinarily understood to mean originating from, incident to, or having connection with" the subject of the exclusion (*United States Fire Ins. Co. v New York Mar. & Gen. Ins. Co.*, 268 AD2d 19, 21-22 [2000] [internal quotation marks omitted]; *see Hertz Corp. v Government Empls. Ins. Co.*, 250 AD2d 181, 186 [1998], *lv denied* 93 NY2d 1040 [1999]; *New Hampshire Ins. Co. v Jefferson Ins. Co. of N.Y.*, 213 AD2d 325, 330 [1995]; *Nycal Corp. v Inoco PLC*, 166 F3d 1201, 1201 [1998]).

Courts in other jurisdictions have interpreted the phrase "arising out of" when dealing with similar vendor endorsements to determine the scope of coverage. In *Pep Boys v Cigna Indem. Ins. Co. of N. Am.* (300 NJ Super 245, 255, 692 A2d 546, 552 [1997]), the court held that the vendor endorsement at issue covered the vendor for its independent negligence in selling the manufacturer's product to a minor who ultimately died from his misuse of the product (*see also Sportmart, Inc. v Daisy Mfg.*, 268 Ill App 3d 974, 645 NE2d 360 [1994]). Guided by this precedent, we conclude that Supreme Court's interpretation, that the policy provides coverage only for products liability and not negligence, is overly narrow and fails to recognize the intention of the parties with respect to this vendor's endorsement and the overall scheme of the policy of insurance. In this regard, we note that there is neither an express provision in the policy which purports to limit coverage to only products liability nor an express provision which purports to exclude coverage for negligence of others. Giving the phrase "arising out of" its intended broad meaning, although the product itself did not cause the injury, there is no dispute that the employee suffered "bodily injury" while he was operating the sideloader and that he was injured because the sideloader was not "repaired," "serviced" or "installed" properly by Arbor, thus making his injuries "incident to" and "connected with" the product by way of Arbor's repair, service and installation of it. Thus, we conclude that coverage is provided for the independent negligence of Arbor under this vendor's endorsement.

The next issue to be addressed is whether, as defendant argues, exclusion 1.D. removes Arbor's negligent acts from

coverage under the policy. This provision provides: 1.D. "Any failure to make such inspections, adjustments, tests or servicing as the Vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with distribution or sale of the products." Under the particular facts of this case, exclusion 1.D. must be read in conjunction with exclusion 1.E. which provides that coverage afforded to Arbor does not apply to "[d]emonstration, installation, servicing or repair operations except such operations performed by the Vendor."

We first note that since coverage has been found to exist, it is defendant's burden to demonstrate that an exclusion in the policy defeats the claim (*see Throgs Neck Bagels v GA Ins. Co. of N.Y.*, 241 AD2d 66, 70-71 [1998]). The insurer's burden is to establish that the exclusion is clear, unmistakable, unambiguous and applies to the fact scenario under consideration (*see Continental Cas. Co. v Rapid-Am. Corp.*, 80 NY2d 640, 652 [1993]). A comparison of these exclusions reveals that exclusion 1.E. contemplates an affirmative act, i.e., demonstration, installation, servicing or repair, while exclusion 1.D. contemplates a failure to provide services. Moreover, exclusion 1.E. does not apply to the vendor. Since Arbor is the vendor and its employees admittedly negligently installed the product, exclusion 1.D. has no application as it does not apply to the installation of the product. Moreover, as the improper adjustment of the rollers is an affirmative act of negligence in the installation process, and as it applies to parties other than a vendor, coverage is not excluded.

Crew III, J.P., Rose, Lahtinen and Kane, JJ., concur. Ordered that the order is reversed, on the law, with costs, defendant's motion denied, plaintiffs' motion granted, summary judgment awarded to plaintiffs and it declared that plaintiff Arbor Handling Services, Inc. is an additional insured under an insurance policy issued by defendant.