2001 ND 51

Lory L. McPHEE and Roy McPhee, individually and as the surviving parents of Sandra A. McPhee, deceased, Plaintiffs and Appellees,

v.

Christopher C. TUFTY and Curtis Tufty, Defendants,

and

AMCO Insurance Company, a corporation, Garnishee and Appellant.

No. 20000047.

Supreme Court of North Dakota.

March 20, 2001.

Rehearing Denied April 12, 2001.

Leland F. Hagen (argued), Lee Hagen Law Office, Ltd., Fargo, ND, for plaintiffs and appellees.

Troy A. Wolf (argued) & Paul R. Oppegard, Smith Bakke Hovland & Oppegard, Moorhead, MN, Michael J. Hagburg (appeared), Smith Bakke Hovland & Oppegard, Bismarck, ND, for garnishee and appellant.

SANDSTROM, Justice.

[¶ 1] AMCO Insurance Company ("AMCO") appealed from an amended judgment awarding Lory L. McPhee and Roy McPhee, individually and as the surviving parents of Sandra A. McPhee, $100,000 from the proceeds of an automobile liability insurance policy AMCO issued to Curtis and Debra Tufty. We conclude the trial court erred in ruling the AMCO insurance policy provided coverage under the circumstances, and we reverse.

I

[¶ 2] In 1994, Curtis and Debra Tufty's teenage son, Christopher Tufty, lived in Gwinner with his parents and brother and sister, Travis and Amanda Tufty. In September 1994, Curtis and Debra Tufty renewed until March 1995 an automobile liability insurance policy they had purchased from AMCO through Brian Orn of the Forman Insurance Agency. The policy limits of the AMCO policy were $100,000 per person and $300,000 per accident, and Curtis, Debra and Travis Tufty were listed on the original application as "Drivers." Christopher and Amanda Tufty were listed as "Children Or Others In Household Not Driving." A 1983 Ford van, a 1979 GMC pickup, and a 1983 Dodge four-door were listed on the declarations page of the policy as the insured vehicles.

[¶ 3] After Christopher Tufty turned 16 years old in April 1994, his parents bought him a 1978 Ford pickup for $500, and the pickup was insured effective May 25, 1994, under the AMCO policy. The engine failed shortly thereafter, and the Ford pickup was dropped from coverage on June 13, 1994. Orn was not informed Christopher was the principal user of the pickup when coverage was obtained.

[¶ 4] On June 16, 1994, Curtis Tufty wrote a $650 check for the purchase of a 1973 Pontiac LeMans. According to Curtis and Christopher Tufty, the teenager paid his father for the car from money he had saved while working part-time during the school year and full-time during the summer. Curtis Tufty said he wrote a check for the Pontiac to make a record of the transaction because Christopher Tufty did not have a checking account.

[¶ 5] Curtis and Debra Tufty wanted to add the Pontiac to their AMCO policy, but Orn requested a driving record for Christopher Tufty. The driving record revealed he had been convicted in 1993 of operating a vehicle without a license and fleeing a law enforcement officer, resulting in his license being suspended for more than 100 days. Orn told Curtis Tufty that AMCO would not cover Christopher Tufty because of his driving record. Orn obtained quotations for coverage from three high-risk insurance carriers, and on September 16, 1994, Orn prepared an application for insurance for the Pontiac with Farm and City Insurance Company ("Farm and City"). The application listed Curtis Tufty as the "Owner" and Christopher Tufty as one of the "Operators." The application informed the company AMCO would not insure Christopher Tufty because of his "driving record." Farm and City issued a policy effective September 16, 1994, to December 16, 1994, which had liability coverage limits of $25,000 per person and $50,000 per accident. Orn opened a second file with a second log relating to

Christopher Tufty. Curtis and Debra Tufty continued to pay the premium on the AMCO policy and also paid the premium on the Farm and City policy.

[¶ 6]   In the meantime, AMCO requested information from Orn during summer 1994 about the status of Christopher Tufty as a driver under its policy.  AMCO sent two requests for the information in August and September 1994, but Orn did not respond with an update on his driver status.

[¶ 7]   On November 12, 1994, Curtis Tufty wrote a $200 check for the purchase of a 1976 Toyota Corolla.   Curtis and Christopher Tufty said the teenager again paid his father cash for the Toyota within the next couple of days.   According to Curtis Tufty, he again paid by check so there would be a family record of the transaction.   According to Christopher Tufty, the Toyota was intended to be a replacement vehicle for the Pontiac.   No request was made to Orn at that time to have the Toyota covered by either the AMCO or Farm and City insurance policy. The Toyota also was not registered in the name of either Curtis or Christopher Tufty.

[¶ 8]   On November 27, 1994, Christopher Tufty was driving the Toyota when it was involved in an accident with another vehicle near Gwinner.   A passenger in the Toyota, Sandra McPhee, was killed, and two other passengers were injured.   Debra Tufty informed Orn of the accident that evening.   A log entry in both Curtis and Christopher Tuftys' files at the insurance agency stated:

> Debra called this evening to tell us that their son, Christopher was involved in a[n] accident east of Gwinner.  He had 3 other passengers with him and slid on ice through a[n] intersection and 1 of the occupants was killed.   She also said that

they had purchased a different car for Chris on Nov. 12, 1994.   The other passengers were also hurt, however, none were injured severely.   The driver of the other auto was not hurt.   See Loss Notice in file for more information.   Debra said there was no alcohol or drugs involved.   She will call us with the Vin number tomorrow.

Orn sent a loss notice regarding the accident to Farm and City, but did not send a loss notice to AMCO.

[¶ 9]   On November 29, 1994, Orn sent AMCO Christopher Tufty's driver information the company had previously requested during the summer.   On December 1, 1994, AMCO amended the Tuftys' policy to omit Christopher Tufty as a household member not driving.   On January 31, 1995, Curtis Tufty had the Farm and City policy changed to list only Christopher Tufty.   The AMCO policy was again changed on March 20, 1995, to specifically list Christopher Tufty as an excluded driver.   On November 7, 1996, Orn filed an automobile loss notice with AMCO.

[¶ 10]   Sandra McPhee's parents, Lory and Roy McPhee, brought a wrongful death action against Curtis and Christopher Tufty in March 1998.  The McPhees and the Tuftys entered into a *Miller v. Shugart* settlement agreement[1] under which the Tuftys confessed judgment in the amount of $124,000.   A stipulated judgment against Christopher Tufty was satisfied from $24,000 in proceeds from the Farm and City insurance policy.   The McPhees agreed to seek the remaining $100,000 of the judgment from Curtis Tufty's AMCO insurance policy, and he assigned his rights against AMCO to the McPhees.  The McPhees and AMCO then entered into a stipulation in which AMCO agreed to be added as a party in the underlying action by service of a garnish-

1.   Under *Miller v. Shugart*, 316 N.W.2d 729 (Minn.1982), an insured defendant may settle a plaintiff's claims and stipulate judgment may be collected only from the proceeds of an insurance policy.   *See Medd v. Fonder*, 543 N.W.2d 483, 485 (N.D.1996).   The stipulated judgment is not conclusive on the insurer, and the plaintiff judgment creditor has the burden of showing the settlement was reasonable and prudent.  *See Rebel v. Nodak Mut. Ins. Co.*, 1998 ND 194, ¶ 5 n. 1, 585 N.W.2d 811.

ment complaint. They also agreed the court would determine whether Curtis Tufty was liable under the family car doctrine and whether the AMCO insurance policy provided coverage under the circumstances. Following an evidentiary hearing, the trial court found Curtis Tufty was liable under the family car doctrine and ruled the AMCO insurance policy provided coverage for the accident.

[¶ 11] The trial court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. AMCO's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01. Retaining jurisdiction under N.D.R.App.P. 35(b), we temporarily remanded this case to the trial court for clarification of an inconsistency in two of its findings of fact. The trial court has submitted its clarification.

II

[¶ 12] AMCO argues the trial court erred in ruling the family car doctrine applied in this case to render Curtis Tufty liable for Christopher Tufty's negligence.

[¶ 13] The family car doctrine imposes liability on the owner of a vehicle for its negligent operation by one who is using the vehicle with the express or implied consent of the owner for purposes of the business or pleasure of the owner's family. *Staroba v. Heitkamp,* 338 N.W.2d 640, 641 (N.D.1983). The doctrine, adopted by this Court more than 80 years ago, is founded on the theory that the driver of a family car, in pursuit of recreation or pleasure, is engaged in the owner's business and is viewed as either the agent or servant of the owner. *Schobinger v. Ivey,* 467 N.W.2d 728, 729 (N.D.1991). The respondeat superior theoretical basis for the doctrine is a fiction created in furtherance of the public policy of giving an injured party a cause of action against a financially responsible defendant. *Michaelsohn v. Smith,* 113 N.W.2d 571, 573–74 (N.D.1962), *overruled on other grounds, Schobinger,*

467 N.W.2d at 730. Under the family car doctrine, the owner of the vehicle is not liable for his own negligence, but is vicariously liable for the tortious acts of the driver. *Nelson v. Johnson,* 1999 ND 171, ¶ 8, 599 N.W.2d 246.

[¶ 14] Whether the family car doctrine applies depends on the totality of the circumstances. *See Erdmann v. Thomas,* 446 N.W.2d 245, 250 (N.D.1989); *Lauritsen v. Lammers,* 161 N.W.2d 804, 805–11 (N.D.1968). While ownership of the vehicle by the head of the household is a circumstance strongly favoring application of the doctrine, *see Staroba,* 338 N.W.2d at 644, to be liable under the family car doctrine, the head of the household must furnish, but need not own, the vehicle for the use, pleasure, and business of himself or a member of his family. *Herman v. Magnuson,* 277 N.W.2d 445, 458 (N.D.1979).

> While the element of furnishing does not hinge on legal ownership, we cannot state exhaustively the complete range of factual patterns sufficient to satisfy this requirement. Important considerations are who paid for the car, who had the right to control the use of the car, the intent of the parties who bought and sold the car, the intent of the parents and the child as to who, between them, was the owner of the car, to whom the seller made delivery of the car, who exercised property rights in the car from the date of its purchase to the date of the accident, and any other evidence that bears on the issue of who is the owner in fact.

*Id.* at 459 (footnote omitted).

[¶ 15] The issue of whether the family car doctrine applies is a question of fact for the trier of fact to decide. *See Herman,* 277 N.W.2d at 459; *Lauritsen,* 161 N.W.2d at 809. A trial court's findings of fact will not be set aside unless they are clearly erroneous. N.D.R.Civ.P. 52(a). A finding of fact is clearly erroneous only if it is induced by an erroneous view of the law

or, although there is some evidence to support it, on the entire record we are left with a definite and firm conviction a mistake has been made. *Hamers v. Guttormson*, 2000 ND 93, ¶ 4, 610 N.W.2d 758.

[¶ 16] The trial court found Curtis Tufty was the "sole owner of the Toyota, or he was a co-owner, joint owner, or owner in common" with his son, and he "furnished" the Toyota to his son "as a family auto." We conclude the trial court's findings are not clearly erroneous, and support its ultimate finding the family car doctrine applies.

[¶ 17] Although the Toyota was not actually registered in the name of either Curtis or Christopher Tufty, Curtis Tufty had been previously listed as the registered owner of the Pontiac on the Farm and City policy, and the Toyota was intended to be a replacement vehicle for the Pontiac. Curtis Tufty purchased the Toyota with a check, in the same manner as he had purchased the Pontiac. The trial court was not required to accept Christopher Tufty's testimony he paid his father for the Toyota or the Pontiac. His testimony was ambiguous about how he paid his father. At one point he said the money came from his savings account, and he later testified he paid his father with cash kept in his bedroom. There is evidence Christopher Tufty did not have enough money in his savings account to purchase either the Toyota or the Pontiac, and a trier of fact could find it unlikely Christopher Tufty kept that much cash in his bedroom.

[¶ 18] Apart from writing the checks for the Pontiac and Toyota, Curtis Tufty paid for the insurance on the vehicles and helped Christopher Tufty pay for other car-related expenses by giving him access to a charge account at an auto parts store. Curtis Tufty also testified he paid for some of the fuel for the vehicles through a family account at a grocery store. Christopher Tufty testified he would have obeyed his father if he had told him to not drive the Toyota, indicating Curtis Tufty had the right to control his son's use of the vehicle, even if that control was not exercised.

[¶ 19] The totality of the circumstances supports the trial court's findings that Curtis Tufty had an ownership interest in the Toyota and furnished the vehicle for Christopher Tufty's use as a family vehicle. We conclude the trial court did not err in ruling the family car doctrine applied in this case.

III

[¶ 20] AMCO argues the trial court erred in ruling its insurance policy provided coverage.

[¶ 21] The interpretation of an insurance policy is a question of law, fully reviewable on appeal, and we review the trial court's interpretation by independently construing and examining the policy. *Close v. Ebertz*, 1998 ND 167, ¶ 12, 583 N.W.2d 794. We look first to the language of the policy as a whole, and if the language is clear on its face, there is no room for construction. *DeCoteau v. Nodak Mut. Ins. Co.*, 2000 ND 3, ¶ 19, 603 N.W.2d 906. Terms of an insurance policy are given their ordinary, usual and commonly accepted meaning. *Center Mut. Ins. Co. v. Thompson*, 2000 ND 192, ¶ 14, 618 N.W.2d 505. Whether an insurance policy is ambiguous is also a question of law for the court to decide, and an ambiguity exists when good arguments can be made for two contrary positions about the meaning of a term in the document. *Fisher v. American Family Mut. Ins. Co.*, 1998 ND 109, ¶ 5, 579 N.W.2d 599.

A

[¶ 22] AMCO argues the trial court erred in ruling Curtis Tufty was "using" the Toyota at the time of the accident within the meaning of its insurance policy.

[¶ 23] The insuring agreement of the AMCO policy provides "[w]e will pay damages for 'bodily injury' or 'property

damage' for which any 'insured' becomes legally responsible because of an auto accident." An "[i]nsured" is defined to mean "[y]ou and any 'family member' for the ownership, maintenance or use ... of any auto...." The AMCO policy excludes liability coverage "for the ownership, maintenance or use of ... [a]ny vehicle, other than 'your covered auto,' which is ... owned by an[y] 'family member;' or ... furnished or available for the regular use of any 'family member.'" However, this exclusion "does not apply to your maintenance or use of any vehicle which is ... owned by a 'family member;' or ... furnished or available for the regular use of a 'family member.'"

[¶ 24] The McPhees argue the Toyota qualifies as "any auto," and by making the Toyota available for his son, Curtis Tufty furthered the family purpose by providing mobility and independence to family members, thereby constituting a "use" by Curtis Tufty of the Toyota at the time of the accident within the meaning of the AMCO policy. The trial court agreed, concluding "because Curtis and Debra furnished the Toyota to Christopher as a family automobile, they were 'using' the vehicle within the meaning of the AMCO policy at the time of the accident." AMCO argues this is an erroneous construction of the policy, because it strains the plain and ordinary meaning of the term "use," and because the Toyota was not being used for any purpose of Curtis Tufty at the time of the accident.

[¶ 25] The term "use" has been described as "the general catch-all of the insuring clause, designed and construed to include all proper uses of the vehicle not falling within one of the previous terms of definition [ownership; maintenance]." 6B Appleman, *Insurance Law and Practice* § 4316, at pp. 341–42 (1979) (footnote omitted). "Use" is "given its ordinary meaning. It denotes the employment of the automobile for some purpose of the user." 8 *Couch on Insurance* § 111:35, at p. 111–61 (3rd ed.1997) (footnotes omitted). *See also Hanneman v. Continental Western Ins. Co.,* 1998 ND 46, ¶ 56 n. 3, 575 N.W.2d 445 (Meschke, J., concurring and dissenting). In the context of insurance law, courts have usually given the term "use" a broad, rather than narrow, construction. *See, e.g., Woodrich Construction Co. v. Indemnity Ins. Co.,* 252 Minn. 86, 89 N.W.2d 412, 418 (1958); *Brown v. Kennedy,* 49 N.E.2d 417, 420 (Ohio App. 1942) *aff'd,* 141 Ohio St. 457, 48 N.E.2d 857 (1943).

[¶ 26] In *Norgaard v. Nodak Mut. Ins. Co.,* 201 N.W.2d 871, 874 (N.D.1972), this Court said "'use', to result in liability on the part of the insurance carrier, must be such use as arises out of the inherent nature of the automobile." *See also Transamerica v. Farmers Ins. Exch.,* 463 N.W.2d 641, 643 (N.D.1990). In *Persellin v. State Auto. Ins. Ass'n,* 75 N.D. 716, 32 N.W.2d 644 (1948), this Court held "[a] person, using an automobile to entertain friends and transport them from place to place, who turns over manual operation of the automobile to one of his guests but remains in the automobile with full power of control over its use, continues to be the person using such automobile." It is therefore clear in this jurisdiction a person need not actually operate a vehicle to "use" it. *See, e.g., Manock v. Donley,* 139 N.W.2d 391, 392 (N.D.1966); *Kadrmas v. Mudna,* 107 N.W.2d 346, 348 (N.D.1961).[2]

[¶ 27] Most courts appear to have taken the view an insured need not be physi-

2. AMCO argues, because this is not a permissive use case, cases addressing whether a driver qualifies as a permissive user under a liability insurance policy have no application to this case. Although the outcome of a permissive use case may be controlled by separate principles, we believe how the term "use" is defined in those cases is nonetheless instructional. *See Johnson v. State Farm Mut. Auto. Ins. Co.,* 190 W.Va. 526, 438 S.E.2d 869, 872 n. 4 (1993). Because the term "use" is recognized as the general catch-all of the insuring clause, we think it is appropriate to consider how the term has been defined in cases dealing with various types of coverage issues. *Id.*

cally present in the vehicle to be using the vehicle for purposes of insurance coverage. *See, e.g., American Auto. Ins. Co. v. Taylor,* 52 F.Supp. 601, 603 (N.D.Ill.1943) (construing Illinois law); *Hertz Corp. v. Amerisure Ins. Co.,* 627 So.2d 22, 23 (Fla. App.1993); *BATS, Inc. v. Shikuma,* 1 Haw.App. 231, 617 P.2d 575, 577–78 (1980); *Royal Indem. Co. v. Shull,* 665 S.W.2d 345, 347 (Mo.1984); *Hertz Corp. v. Government Employees Ins. Co.,* 250 A.D.2d 181, 683 N.Y.S.2d 483, 487 (N.Y.App.Div.1998). *But see Apcon Corp. v. Dana Trucking, Inc.,* 251 Ill.App.3d 973, 191 Ill.Dec. 216, 623 N.E.2d 806, 811 (1993) (to constitute a use or be a user under insurance policy, "one must be in operation of the vehicle"). In deciding whether a vehicle was "used" by an insured when a third party was actually driving the insured's vehicle, courts have analyzed two factors: (1) whether the vehicle was under the supervision and control of the insured; and (2) whether the vehicle was being operated to serve a purpose of the insured. *Shikuma,* 617 P.2d at 577; *Government Employees,* 683 N.Y.S.2d at 487. *See also Johnson,* 438 S.E.2d at 872 ("Inherent in the concept of 'use' is the exercise of control over the vehicle").

[¶ 28] The McPhees principally rely on *Brabender v. Northern Assur. Co. of America,* 65 F.3d 269 (2nd Cir.1995), and *Rogers v. MFA Mut. Ins. Co.,* 262 Ark. 55, 554 S.W.2d 327 (1977), to support their argument Curtis Tufty was using the Toyota at the time of the accident. In *Brabender,* 65 F.3d at 270, a mother asked a part-time nanny who resided with the family to bring her son to a nail salon so she could be with the child. When the nanny discovered her car would not start, the mother's daughter agreed to let the nanny use her car for the errand. *Id.* While driving the child back from the nail salon in the daughter's car, the nanny was involved in an accident, and the child was seriously injured. *Id.* at 271. The son, through his father, sued several persons involved, including the mother and the sister. *Id.* The mother brought a declaratory

judgment action against her insurance company to determine coverage. *Id.* Relying on an exception to an exclusion in the insurance policy virtually identical to the policy in this case, which provided the exclusion did not apply to "your maintenance or use" of any vehicle owned by a family member, the mother argued the term "your ... use" included physical operation by the insured's employee, the nanny, at the direction of and for the purposes of the insured. *Id.* at 272. The court noted none of the cases it reviewed had "given quite as broad a meaning as [the mother] advocates in this case," but concluded the term "your ... use" was ambiguous because both constructions advocated by the parties were equally reasonable. *Id.* at 272–73. Applying a New York rule of insurance contract construction requiring resolution in favor of the insured and against the insurer where there is an ambiguity as to the existence of coverage, the court ruled the accident was covered by the mother's insurance policy. *Id.* at 273.

[¶ 29] *Brabender* is distinguishable on its facts. Christopher Tufty was not Curtis Tufty's employee. Moreover, unlike the specific directive by the mother to the nanny in *Brabender* to bring the child to the mother, Christopher Tufty was not using the Toyota at the specific direction of his father. The McPhees' argument that a generalized family purpose of providing mobility and independence to family members constitutes a "use" within the meaning of the insurance policy stretches *Brabender* far beyond its limits.

[¶ 30] In *Rogers,* 554 S.W.2d at 328, a father was awarded custody of his daughter in a divorce proceeding, and the father permitted the daughter to visit her mother. On one visit, the daughter collided with another vehicle while she was driving her mother's car, injuring the other driver. *Id.* The other driver sued the father, claiming he was liable under a statute imputing the negligence of a minor to the person who had signed the minor's driver's license

application. *Id.* at 328–30. The parties stipulated the daughter was not on a personal or business mission for the father at the time of the collision. *Id.* at 328. The policy in *Rogers* provided coverage for the insured's "actual use" of a non-owned auto, and the issue was whether the insured father was engaged in the actual use of a non-owned auto when he gave his daughter permission to use the mother's car. *Id.* at 330. The court interpreted the term "actual use" to "include that use which is imputed to an individual through what is known in law as vicarious liability," and ruled the statute "places a parent in the position of an actual user of an automobile any time the parent knowingly permits a minor to drive an automobile upon a highway," thereby making the father "a user of the non-owned automobile within the meaning of the policy at the time of the collision...." *Id.*

[¶ 31] *Rogers* is distinguishable on its facts and because it is based on an Arkansas vicarious liability statute imputing liability to the father. The *Rogers* court held, because the father permitted the daughter to drive, the statute itself placed the parent in the position of an actual user within the meaning of the policy. In this case, the McPhees place no reliance on N.D.C.C. § 39–06–09 to impute statutory liability to the Tuftys. Rather, the McPhees rely on the family car doctrine. Although liability under the family car doctrine is vicarious in nature, this Court has not imposed liability on an insurer based solely on the family car doctrine without regard to the coverage defined by the insurance policy. *See, e.g., Midwest Cas. Ins. Co. v. Whitetail,* 1999 ND 133, ¶¶ 2–4, 11, 596 N.W.2d 341. Liability under the family car doctrine does not ipso facto establish a "use" of a vehicle under the terms of an insurance policy. *See generally Allstate Ins. Co. v. Brown,* 920 F.2d 664, 670 (10th Cir.1990); *Rogers,* 554 S.W.2d at 331 (Fogleman, J., dissenting) ("But not every situation in which there might be statutorily imposed vicarious liability makes the use of a motor vehicle actual use by the one held vicariously liable.").

[¶ 32] The term "use" is not ambiguous. The trial court found the Tuftys "had the authority to control Christopher's conduct in 1994, including whether he drove any vehicle, including the Pontiac and the Toyota Corolla." Although this finding arguably satisfies the first factor for determining whether a vehicle was "used" by an insured when a third-party is actually operating the insured's vehicle, the second factor is whether the vehicle was being operated to serve a purpose of the insured. The trial court found the Tuftys were "using" the vehicle at the time of the accident within the meaning of the AMCO policy because they "furnished the Toyota to Christopher as a family automobile." We conclude operating a vehicle furnished to a family member for unrestricted use as a family automobile is insufficient, as a matter of law, to constitute operation of the vehicle to serve a purpose of the insured within the meaning of the insurance policy.

[¶ 33] The exception to the exclusion in the AMCO policy is obviously meant to provide coverage in those temporary situations in which the named insured must use a vehicle owned by another family member, or furnished or available for the regular use of any family member, and, as such, is simply an extension of the coverage which is provided when the named insured engages in the permissive use of vehicles owned by other third parties. *See, e.g.,* 6C Appleman *Insurance Law and Practice* § 4455, at p. 552 (1979) ("The purpose of a 'drive other cars' clause is to provide coverage to an insured, and others for the occasional and infrequent driving of vehicles other than those insured by the policy.") If we were to accept the McPhees' construction of the exception to the exclusion, the exclusion would be rendered meaningless and coverage would exist in all cases in which the named insured could be held liable for another's negligence while driving a vehicle owned by or furnished for the regular

use of a family member, despite the express exclusion of coverage for the "use of ... [a]ny vehicle, other than 'your covered auto,' which is ... owned by ... or ... furnished or available for the regular use of any 'family member.'" We construe insurance contracts as a whole to give meaning and effect to each clause, if possible. *Ziegelmann v. TMG Life Ins. Co.*, 2000 ND 55, ¶ 6, 607 N.W.2d 898.

[¶ 34] We will not strain the definition of an undefined term to provide coverage for an insured. *Ziegelmann*, at ¶ 6. In this case, Christopher Tufty was not running an errand for his father or mother when he drove the Toyota at the time of the accident. The Toyota was not being "used" for any specific purpose of Curtis or Debra Tufty. Christopher Tufty was using the vehicle for his own purposes. We conclude the trial court erred in ruling the Tuftys were using the vehicle at the time Christopher Tufty was involved in the accident.

### B

[¶ 35] AMCO also argues the trial court erred in ruling the Toyota was a "newly acquired vehicle" covered under the insurance policy.

[¶ 36] The AMCO policy provides coverage for "covered auto[s]." In addition to vehicles shown in the declarations, "[y]our covered auto" is defined to include:

2.  Any of the following types of vehicles on the date you, or a corporation of which you are the sole owner, become the owner:

a.  a private passenger auto: ...

....

This provision (J.2.) applies only if:

a.  you, or a corporation of which you are the sole owner, acquire the vehicle during the policy period;

b.  you ask us to insure it within 30 days after you, or a corporation of which you are the sole owner, become the owner;....

[¶ 37] The McPhees argue the Toyota qualifies as a newly acquired vehicle because Curtis Tufty owned the Toyota and satisfied the notice requirement when Debra Tufty contacted Orn to inform him of the accident. AMCO argues the Tuftys did not own the Toyota, and even if they did, they did not make a sufficient request within 30 days of purchase to have the Toyota added to the AMCO policy. The trial court found the Tuftys owned the vehicle, and the "report of the accident and conversation with the agent by Debra Tufty on November 27, 1994, was a request for coverage under both Farm & City and AMCO policies." The court ruled the "newly acquired clause in the AMCO policy is ambiguous and must therefore result in coverage even though the Tuftys did not make a specific request for AMCO coverage on the vehicle within thirty days of the purchase."

[¶ 38] We reject AMCO's argument the trial court erred in ruling Curtis Tufty was the "owner" of the Toyota within the meaning of the insurance policy. Ownership may occur in various forms. *See, e.g., Rothe v. S–N–Go Stores, Inc.*, 308 N.W.2d 872, 875 (N.D.1981); N.D.C.C. §§ 47–01–01, 47–02–01 to 47–02–08. Registration of the vehicle is not determinative. *See Green v. Connecticut Fire Ins. Co.*, 61 N.D. 376, 381, 237 N.W. 794, 796 (1931). Courts have held the term "ownership" necessarily comprehends both sole and joint ownership. *See American Indem. Co. v. Davis*, 260 F.2d 440, 442 (5th Cir.1958) (construing Georgia law); *Dolan v. Welch*, 123 Ill.App.3d 277, 78 Ill.Dec. 675, 462 N.E.2d 794, 796–97 (1984); *Quaderer v. Integrity Mut. Ins. Co.*, 263 Minn. 383, 116 N.W.2d 605, 608–09 (1962); Annot., *Construction and application of "automatic insurance" or "newly acquired vehicle" clause ("replacement," and "blanket," or "fleet" provisions) contained in automobile liability policy*, 39 A.L.R.4th 229, § 6[a] (1985). The trial court found Curtis Tufty had an ownership interest in the Toyota, and we have held that finding

is not clearly erroneous. The trial court did not err in ruling Curtis Tufty was also the "owner" of the Toyota for purposes of the insurance policy.

[¶ 39] AMCO argues there was no request for coverage for the Toyota within 30 days of its acquisition in order for the newly acquired vehicle coverage to become effective. Coverage of a newly acquired vehicle is automatic if notice is given within 30 days of its acquisition. *See Nodak Mut. Ins. Co. v. Loeffler*, 225 N.W.2d 290, 293 (N.D.1974).

[¶ 40] We reject AMCO's suggestion the Tuftys were required to notify AMCO directly at its home office of the newly acquired vehicle, and merely notifying Orn was insufficient to comply with the terms of the insurance policy. The policy does not dictate any specific form of notice. Orn was AMCO's agent as a matter of law. *See Ingalls v. Paul Revere Life Ins. Group*, 1997 ND 43, ¶ 21, 561 N.W.2d 273; N.D.C.C. § 26.1-26–06. AMCO's argument that the Tuftys could not comply with the policy by simply conveying the information to Orn is without merit. *See Western Mut. Ins. Co. v. Wood*, 246 Iowa 1143, 70 N.W.2d 563, 565 (Iowa 1955); *Quaderer*, 116 N.W.2d at 609–10; Annot., 39 A.L.R.4th 229, at § 25.

[¶ 41] Although the method of notice was adequate, we conclude, under the circumstances of this case, the information Debra Tufty conveyed to Orn was insufficient as a matter of law to constitute notice of a newly acquired vehicle under the AMCO policy. The trial court noted "the Tuftys did not make a specific request for AMCO coverage on the vehicle within thirty days of the purchase," but found the "report of the accident and conversation with the agent by Debra Tufty on November 27, 1994, was a request for coverage under both Farm & City and AMCO policies." The undisputed evidence in the record does not support this finding.

[¶ 42] When the Tuftys asked Orn to have Christopher Tufty and the Pontiac added to their AMCO policy, Orn, upon discovering the teenager's poor driving record, specifically informed them he was not eligible for standard coverage with AMCO, based on its underwriting guidelines. Orn then obtained separate high risk coverage for Christopher Tufty from Farm and City. Under these circumstances, the only reasonable inference to be drawn from Debra Tufty's call to Orn informing him Christopher Tufty had acquired a new vehicle and had been involved in an accident is that she was requesting coverage under the Farm and City policy. Orn responded accordingly, immediately sending a loss notice to Farm and City, but not to AMCO.

[¶ 43] We do not suggest an insured must request from an insurance agent coverage under a specific policy to satisfy the notice requirements of a newly acquired vehicle clause in all circumstances. We recognize vehicle owners often have several vehicles and several insurance policies, and insureds rely on insurance agents to take appropriate steps regarding their insurance needs. But here, neither the insureds nor the agent had any intention of adding, or even the expectation they could add, the Toyota as a vehicle covered under the AMCO policy. Under these circumstances, the insureds must impart more information to the agent than the acquisition of a new vehicle and its involvement in an accident.

[¶ 44] We conclude the newly acquired vehicle clause is not ambiguous, and the trial court's finding Debra Tufty's communication with Orn constituted a request for coverage under both policies is clearly erroneous. Because there was no compliance with the notice requirement, the Toyota was not covered under the newly acquired vehicle clause of the AMCO policy. The trial court erred in ruling the AMCO policy provided coverage in this case.

## IV

[¶ 45] The amended judgment is reversed.

[¶ 46] Dale V. Sandstrom.

Kapsner, Justice, concurring in the result.

[¶ 47] I concur with the result of the majority, but I do not join in its reasoning. I would not reach the issue of the family car doctrine because I do not believe it is necessary to the decision in this case. The family car doctrine was created for purposes of extending liability to the owner of a car, thereby presumably creating a source of recovery for an injured individual. *Herman v. Magnuson*, 277 N.W.2d 445, 455 (1979). The issue of insurance coverage for that liability, however, is a distinct issue and should be determined on principles of contract. While I have some question whether the family car doctrine makes continuing sense in the context of statutorily mandated insurance, I am convinced that the doctrine does not determine the outcome in this case. The Tuftys entered into a settlement which stipulated to liability, but limited direct recovery. The terms of that Miller–Shugart settlement allowed the McPhees to pursue coverage rights which the Tuftys had against AMCO. Therefore, the decision should be based on a determination of the contractual rights of coverage.

[¶ 48] With respect to whether there was "use" of the Toyota for purposes of Part A—Liability Coverage, I agree with the analysis of Justice Neumann in paragraphs 55 through 57 of his special concurrence.

[¶ 49] With respect to the issue of whether the Toyota was a covered "newly acquired vehicle" under the AMCO policy, like Justice Neumann, I believe the reasoning of the Iowa Supreme Court in *Farm & City Ins. Co. v. Anderson*, 509 N.W.2d 487 (Iowa 1993) is persuasive because it comports with the plain language of the policy. As did the policy in the Iowa case, the AMCO policy in this case provides for coverage of a newly acquired vehicle "only if" certain conditions are met. It is contrary to the plain meaning of such conditional language to imply automatic coverage for the first thirty days after acquisition of a new vehicle. Public policy does not provide a basis for finding automatic coverage as suggested by Justice Maring in her partial dissent. Legislative mandate requires certain insurance coverage for all drivers and that mandate was met by the Tuftys in this case. A separate policy which provided the mandatory coverage for the prior vehicle driven by Christopher was in place and the Toyota was treated as a newly acquired vehicle under that policy; coverage was extended for this accident to the limits of the Farm & City policy. I don't believe public policy can be construed to extend beyond those mandates.

[¶ 50] The trial court made two findings on whether notice was given to AMCO for coverage of a newly acquired vehicle. The court found, after clarification on remand:

42.

Prior to November 27, 1994, the date of the accident, Curtis and Debra Tufty never requested to have the Toyota added to the AMCO policy. Prior to November 27, 1994, the agent never contacted the parent company and requested that the Toyota be added to the AMCO policy. Curtis Tufty testified that it was his understanding and expectation that Christopher and his vehicles were not involved with AMCO, that he did not intend to have the Toyota insured under his AMCO policy and that it was intended that Christopher and his vehicles would and could only be covered by Farm & City. Brian Orn testified that the [sic] he did not intend or expect coverage under the AMCO policy to apply to Christopher's Toyota because coverage was separately issued by Farm & City for Christopher and the Pontiac and because the Toyota was intended to replace the Pontiac.

58.

The Court makes a specific finding of fact that the report of the accident and

conversation with the agent by Debra Tufty on November 27, 1994, was a request for coverage under both Farm & City and AMCO policies.

[¶ 51] I, too, have some difficulty in the holding of the majority opinion that the information Debra Tufty conveyed to Orn was insufficient as a matter of law to constitute notice of a newly acquired vehicle under the AMCO policy. I would hold that the finding is clearly erroneous because it is contrary to the evidence presented. The testimony of Brian Orn is summarized in Finding 42 as is the understanding of Curtis Tufty on the coverage of the Toyota automobile. There is no suggestion in the findings the court found these witnesses not to be credible. Mrs. Tufty did not testify. Therefore, the record contains no support for Finding 58. Findings of fact are clearly erroneous when there is no evidence to support the finding. *Moilan v. Moilan*, 1999 ND 103, ¶ 9, 598 N.W.2d 81. In its Conclusions of Law, the trial court stated "[t]he newly acquired clause in the AMCO policy is ambiguous and must therefore result in coverage even though the Tuftys did not make a specific request for AMCO coverage on the vehicle within thirty days of the purchase." Whether a policy is ambiguous is a question of law. *Fisher v. American Family Mut. Ins. Co.*, 1998 ND 109, ¶ 5, 579 N.W.2d 599. I do not find the ambiguity that would permit the determination that coverage exists under these facts.

[¶ 52] Therefore, I concur in the result of the majority opinion.

[¶ 53] Carol Ronning Kapsner.

NEUMANN, Justice, concurring specially.

[¶ 54] I concur in the result reached by the majority. I do not agree with, and I respectfully dissent from, paragraph 32 of the majority's opinion, holding Curtis's furnishing the Toyota to Christopher cannot constitute a "use" of the vehicle under an insurance policy. If this Court is going to abolish the possibility of insurance coverage for liability imposed by the family use doctrine, we should do it in a case in which that specific issue has been briefed and argued.

[¶ 55] I nevertheless concur in the majority's result, based primarily on the language in the insurance contract. The contract provides, as an exclusion under Part A–Liability Coverage:

> B. We do not provide Liability Coverage for the ... use of:
>
> . . .
>
> 3. Any vehicle, other than "your covered auto," which is:
>
> . . .
>
> b. furnished or available for the regular use of any "family member."
>
> However, this exclusion (B.3.) does not apply to *your* ... use of any vehicle which is:
>
> . . .
>
> b. furnished or available for the regular use of a "family member." (Emphasis added.)

[¶ 56] I believe the exclusion clearly is intended to address the possibility of liability for an accident just like the one in this case. The exclusion says the policy does not cover a vehicle furnished for the regular use of a family member unless it is a "covered auto." In this case, I think everyone agrees Christopher falls within the policy's definition of a "family member." Therefore, if the Toyota is not a "covered auto" the exclusion applies.

[¶ 57] Justice Maring argues, in her dissent, that the exception to the exclusion, excepting "your" use of a vehicle furnished for the use of a family member, creates ambiguity, and she would therefore construe the policy in favor of the insured as providing coverage. This Court has said when two good arguments can be made for either of two contrary positions as to the meaning of a term in a document, an ambiguity exists. *Garofalo v. St. Joseph's Hospital*, 2000 ND 149, ¶ 7, 615 N.W.2d 160. The dissent's argument,

however, requires us to accept as reasonable an interpretation of the exception that completely gobbles up the exclusion, making it meaningless. The dissent argues that B.3. excludes the furnishing of a vehicle for the regular use of a family member, but grants an exception for the furnishing of a vehicle for the regular use of a family member. That is not a reasonable interpretation that leads me to find an ambiguity.

[¶ 58] The question then is whether the Toyota is a covered auto or a vehicle other than "your covered auto" under the exception. To answer that we must look to the definition of "your covered auto," and to the "newly acquired vehicle" provision of the policy. In its Definitions section the policy states:

J. "Your covered auto" means:

1. Any vehicle shown in the Declarations.

2. Any of the following types of vehicles on the date you ... become the owner:

a. a private passenger auto; or

b. a pickup or van.

This provision (J.2.) applies only if:

a. you ... acquire the vehicle during the policy period;

b. you ask us to insure it within 30 days after you ... become the owner; and

c. with respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

[¶ 59] The majority holds that, while the trial court did not err in finding Curtis Tufty had acquired an ownership interest in the Toyota for the purposes of provision J.2., Curtis and Debra Tufty, as named insureds, failed to make a specific request for coverage under the AMCO policy within thirty days, and therefore the newly acquired vehicle provision never took effect. The majority holds there can be no coverage under the newly acquired vehicle clause unless there is a specific request for such coverage. The dissent argues this

holding is contrary to the law in a majority of jurisdictions in this country, that most jurisdictions have held there is automatic coverage for thirty days after acquisition of a new vehicle, and that a request to the company is necessary only if the coverage is to be extended beyond the thirty days.

[¶ 60] Because of the specific language in AMCO's policy, I would apply in this case the reasoning in *Farm & City Ins. Co. v. Anderson,* 509 N.W.2d 487 (Iowa 1993). In that case the Iowa Supreme Court rejected the majority rule. Construing identical contract language, the Iowa Court stated:

The policy provides that a newly acquired vehicle becomes a "covered auto" "*only if*": (1) the insured acquires the vehicle within the policy period; *and* (2) the insured asks the company to insure it within thirty days after the insured becomes the owner. The insured's request for coverage is a condition that must be met in order for the newly acquired vehicle to be a "covered auto" under the policy. We fail to see how a reasonable person could read this provision to mean anything else.

*Anderson,* at 491. Like the Farm & City policy in the Iowa case, the AMCO policy in this case clearly and unambiguously affords coverage for a newly acquired vehicle "only if" the insured asks AMCO to insure it within thirty days after becoming the owner.

[¶ 61] In *Anderson,* however, the insured had made no effort to contact the insurance company during the thirty-day period. In this case, the Toyota was acquired on November 12, 1994, and Debra Tufty contacted the insurance agent with information of the accident on November 27, 1994, less than thirty days later. In addressing this contact the trial court found the agent was never asked to add the Toyota to Curtis and Debra Tufty's AMCO policy, prior to November 27, 1994, but that the report of the accident somehow constituted a request for coverage

under the AMCO policy. The finding that the November 27, 1994, contact was a request for coverage under the AMCO policy is not supported by any evidence in the record. It is clearly erroneous. The trial court then also erroneously concluded as a matter of law that the newly acquired vehicle clause in the AMCO policy is ambiguous and must therefore result in coverage even if the Tuftys did not make a specific request for AMCO coverage on the vehicle within thirty days of the purchase.

[¶ 62] The newly acquired vehicle clause in AMCO's policy is not ambiguous. The trial court's finding that Debra Tufty requested coverage under the AMCO policy is clearly erroneous. Because AMCO was not asked to insure the Toyota, as unambiguously required by the newly acquired vehicle clause, the Toyota never became a "covered vehicle" under the AMCO policy, and it is therefore excluded from liability coverage by the terms of the policy.

[¶ 63] I therefore concur in the result reached by the majority.

[¶ 64] William A. Neumann.

VANDE WALLE, Chief Justice, concurring and dissenting.

[¶ 65] I concur in parts II and IIIA of the opinion written by Justice Sandstrom.

[¶ 66] I disagree as to part IIIB because I believe there is some evidence to support the finding of the trial court that the report of the accident constituted a request for coverage under the AMCO policy. I therefore would affirm the trial court on that narrow ground.

[¶ 67] Gerald Vande Walle, C.J.

MARING, Justice, concurring in part and dissenting in part.

[¶ 68] I agree with parts I and II of the majority opinion. I respectfully dissent from parts III, A and B.

[¶ 69] The first question presented under the AMCO policy is whether there is

coverage for Curtis Tufty for the liability, imputed to him by the family car doctrine, for the negligence of his son, Christopher, while driving an automobile.

[¶ 70] As the majority points out, the AMCO policy provides, "We will pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident." This language would seem to provide coverage for Curtis Tufty, because his liability arises as a result of the death of Sandra McPhee in an auto accident. However, the AMCO policy contains an exclusion which states coverage is not provided "for the ownership, maintenance or use of ... [a]ny vehicle, other than 'your covered auto,' which is ... furnished or available for the regular use of any 'family member.'" This exclusion seems to deny coverage in this case, assuming arguendo the Toyota does not fit within the definition of "your covered auto." There is an exception to this exclusion, though, which provides "this exclusion (B.3) does not apply to your maintenance or use of any vehicle which is ... owned by a 'family member;' or ... furnished or available for the regular use of a 'family member.'" McPhees argue the term "your ... use" in this exception is ambiguous.

[¶ 71] The rules regarding the construction of insurance policies are well established in North Dakota including that "any ambiguity or reasonable doubt as to the meaning of an insurance policy is strictly construed against the insurer and in favor of the insured." *Fisher v. American Family Mut. Ins. Co.*, 1998 ND 109, ¶ 6, 579 N.W.2d 599. "If the language in an insurance contract will support an interpretation which will impose liability on the insurer and one which will not, the former interpretation will be adopted." *Aid Ins. Services, Inc. v. Geiger*, 294 N.W.2d 411, 414 (N.D.1980). "Exclusions from broad coverage in an insurance policy are strictly construed against the insurer. An exception to an exclusion from broad

coverage results in coverage." *Fisher,* 1998 ND 109, ¶ 6, 579 N.W.2d 599 (citations omitted).

[¶ 72] McPhees argue a reasonable interpretation of "your ... use" would include employment for some purpose of the user and that purpose is the pursuit of family convenience, recreation and pleasure. As the majority states: "[Use] denotes the employment of the automobile for some purpose of the user." 8 Lee R. Russ, *Couch on Insurance* § 111:35, at 111–61 (3d ed.1997) (footnotes omitted). The majority also correctly states: "In the context of insurance law, courts have usually given the term "use" a broad, rather than narrow, construction." *See, e.g., Woodrich Constr. Co. v. Indem. Ins. Co.,* 252 Minn. 86, 89 N.W.2d 412, 418 (1958). Most courts, including our Court, have taken the position a person need not actually operate a vehicle to "use" it. *See, e.g., Hertz Corp. v. Amerisure Ins. Co.,* 627 So.2d 22, 23 (Fla.App.1993); *BATS, Inc. v. Shikuma,* 1 Haw.App. 231, 617 P.2d 575, 577–78 (1980); *Hertz Corp. v. Gov't Employees Ins. Co.,* 250 A.D.2d 181, 683 N.Y.S.2d 483, 487 (N.Y.App.Div.1998); *Manock v. Donley,* 139 N.W.2d 391, 392 (N.D.1966). The majority concludes the standard analysis applied in deciding whether an insured "used" a vehicle when the insured was not driving is "(1) whether the vehicle was under the supervision and control of the insured, and (2) whether the vehicle was being operated to serve a purpose of the insured." *Shikuma,* 617 P.2d at 577. The Toyota was under the supervision and control of Curtis Tufty according to the findings of the trial court, and even the majority concedes the first inquiry. of the analysis is satisfied in this case. I am of the opinion the second inquiry is also satisfied.

[¶ 73] Curtis Tufty's liability is based on the family car doctrine. The majority concludes the evidence supports the trial court's findings that Curtis Tufty had an ownership interest in the Toyota and furnished the vehicle for Christopher Tufty's use as a family auto. The family purpose doctrine was first adopted in this state more than eighty years ago, and we reaffirm it today. *See Ulman v. Lindeman,* 44 N.D. 36, 176 N.W. 25, 27 (1919). "The decision was founded upon the theory that the driver of a family car, *in pursuit of recreation or pleasure, was engaged in the owner's business,*" and thus the driver was either the agent or servant of the owner. *Schobinger v. Ivey,* 467 N.W.2d 728, 729 (N.D.1991) (emphasis added). Clearly the Toyota was being operated to serve and benefit the family purpose of Curtis Tufty, the owner.

[¶ 74] The majority struggles to distinguish *Rogers v. MFA Mut. Ins. Co.,* 262 Ark. 55, 554 S.W.2d 327 (1977). The only factual difference between *Rogers* and the present case is that the Supreme Court of Arkansas relied on an Arkansas statute that imputed the negligence of a minor child to a parent who signed the application of the minor for a permit or license. *Id.* at 329–30. Although the McPhees did not argue the applicability of N.D.C.C. § 39–06–09, it must be noted that this North Dakota statute imputes the negligence of a minor when driving a motor vehicle to the person who has signed the application for a permit or license. *See Anderson v. Anderson ex rel.,* 1999 ND 57, ¶ 7, 591 N.W.2d 138 (interpreting N.D.C.C. § 39–06–09 to establish that a minor's negligence as well as financial liability will be imputed to a parent who signed the application for a permit, barring recovery for injuries to that parent). The *Rogers* decision is persuasive. The *Rogers* court concluded the statute's imputation of negligence was vicarious liability and placed the "parent in the position of an actual user of an automobile any time the parent knowingly permits a minor to drive an automobile upon a highway, ..." 554 S.W.2d at 330.

[¶ 75] Although *Brabender v. Northern Assurance Co. of America,* 65 F.3d 269 (2nd Cir.1995) is not factually directly on point, its analysis of the ambiguity of the

term "use" is persuasive. Both the *Brabender* court and the *Rogers* court hold the term "use" as used in similar policies ambiguous. *Brabender*, 65 F.3d at 273; *Rogers*, 554 S.W.2d at 330. Both courts point out that "use" of an auto means more than operation of the auto by the insured. *Brabender*, 65 F.3d at 272; *Rogers*, 554 S.W.2d at 330. The *Brabender* court concluded it must construe the term "your use" in the insured's favor when "[n]either the contract itself nor any other evidence submitted by the parties permits us to resolve the meaning and scope of the term 'your ... use.'" 65 F.3d at 273. The majority does not cite to one case in support of its conclusion this term as used in an insurance policy is not ambiguous.

[¶ 76] I would conclude the term "your ... use" is ambiguous, construe it in favor of the insured in light of the public policy enunciated in the family purpose doctrine which is firmly established in this state and affirm the trial court.[3]

[¶ 77] The second question presented under the AMCO policy is whether the Toyota was covered as a "newly acquired vehicle." The AMCO policy provides coverage for a private passenger auto on the date the insured becomes the owner. The policy then, however, states "this provision (J.2.) applies only if ... [the insured] acquire[s] the vehicle during the policy period ... [and the insured] ask[s] [the

insurance company] to insure [the newly acquired vehicle] within 30 days after [the insured] ... become[s] the owner." I would affirm the trial court and conclude that this language is ambiguous and when reasonably read means that a newly acquired vehicle is automatically covered during the thirty-day notice period, and notice is only a condition to obtaining coverage beyond the thirty-day period.

[¶ 78] The purpose of an automatic insurance clause is to provide insurance coverage when an owned vehicle is not listed in the insurance policy and to provide coverage for the newly acquired car at the earliest time the insured needs protection. 8 Russ, *Couch on Insurance, supra,* § 117:2, at 117–10 (footnotes omitted). Such clauses are for the benefit of the insured and can be found in most standard automobile liability policies. *Id.* "The 'automatic insurance' clause ... is intended to meet the need to maintain insurance coverage in the situation arising from the recognized custom among insured owners of acquiring other cars by replacement and new purchases during the life of their policies...." *Id.* In *Adams v. Bartel*, 129 N.W.2d 755, 758 (N.D.1964), our Court stated: "The purpose for the automatic insurance clause was to broaden coverage and not to restrict it."

[¶ 79] The majority opinion has chosen to follow a minority view.[4] Courts have

---

3. The special concurrence of Justice Neumann concludes this interpretation of the exception "completely gobbles up the exclusion, making it meaningless." That is not true. The exclusion would still apply to the use of a vehicle furnished for a family member by a relative, a friend, a neighbor, etc. In addition, our Court has held an exclusion clause that violates public policy is not valid. *See Hughes v. State Farm Mut. Auto. Ins. Co.*, 236 N.W.2d 870 (N.D.1975) (holding the "household or family exclusion clause" in a policy of liability insurance violated public policy as expressed in our financial responsibility laws and was thus void). The family car doctrine is based on the public policy of giving an injured party a right to pursue a financially responsible defendant. "The overriding purpose of our financial responsibility laws is to

protect innocent victims of motor vehicle accidents from financial disaster." *Richard v. Fliflet*, 370 N.W.2d 528, 534 (N.D.1985). The family car doctrine imposes liability on the parent who furnishes the child a vehicle for family purposes. Our Legislature has imposed financial liability for the negligence of a child on a parent who signs the application for a permit to drive a motor vehicle. N.D.C.C. § 39–06–09. If this liability is construed the way the majority suggests, there is no way for a parent to insure against this vicarious liability under these facts.

4. The trial court held the "newly acquired vehicle" clause ambiguous following the majority of jurisdictions addressing this issue. The majority and special concurrence cast aside the issue of whether the conditions ap-

almost unanimously recognized that an insured's failure to give the insurer timely notice of a newly acquired vehicle does not affect automatic insurance coverage for liability arising during the notice period, but does bar insurance coverage for liability arising after the notice period. Annotation, *Construction and Application of "Automatic Insurance" or "Newly Acquired Vehicle" Clause ("Replacement," and "Blanket," or "Fleet" Provisions) Contained in Automobile Liability Policy*, 39 A.L.R.4th 229, § 2 (1985); 8 Russ, *Couch on Insurance, supra*, § 117:35, at 117–57–58. The insured's duty to notify is a condition only to acquiring coverage after the grace period has expired. If an accident takes places within the notice or grace period, but before notice has been given, it is, therefore, generally held that the insured is afforded coverage. *See Badger State Mut. Cas. Co. v. Swenson*, 404 N.W.2d 877, 879 (Minn.App.1987).

[¶ 80] In *Hobby v. Farmers Ins. Exchange*, 212 Mich.App. 100, 537 N.W.2d 229, 230 (1995), the Michigan Court of Appeals held that an automatic insurance clause extended coverage to a replacement vehicle despite the insured's failure to notify the insured of her replacement. The court explained the rationale for its decision, in stating:

> [The insurer] contracted to provide insurance coverage with or without notice for thirty days, so its risk is not in any way increased or altered by this holding. Once the thirty-day period expires, of course, coverage is terminated unless timely notice has been provided.

> To hold otherwise would permit an insurer to contract to assume a risk and accept a premium for coverage of the replacement vehicle for the thirty-day grace period, and then retroactively cancel or withhold coverage in the event the risk becomes an actuality in the form of an accident involving the replacement vehicle. We find no justification for such a retroactive cancellation in the face of the plain language of the contract to the contrary.

*Id.* at 230–31.

[¶ 81] The policy language in *Hobby* provided that replacement vehicles would be covered by the insured if the insurer was told about the replacement "within 30 days after the date of acquisition." *Id.* at 230. The court stated that until the thirtieth day following the acquisition of a new vehicle, coverage extends automatically regardless of notice from the insured. *Id.* at 231.

[¶ 82] Rationales similar to that of *Hobby* are applied throughout the majority of jurisdictions. Both the Arizona Court of Appeals and the Minnesota Court of Appeals have concluded that the purpose and effect of an "automatic insurance" clause operates to make notice a condition precedent to extension of coverage beyond the grace period. *Daniels v. State Farm Mut. Auto. Ins. Co.*, 177 Ariz. 340, 868 P.2d 353 (App.1994); *Swenson*, 404 N.W.2d 877. The language in *Daniels* is nearly identical to the language here. 868 P.2d at 354. It provided coverage for a newly acquired car "but only if you . . . tell [the insurer] about it within 30 days after its delivery[;] . . . tell [the insurer] which [policy] is to apply; and . . . pay [the insurer] any added amount due." *Id.* The court initially noted that most jurisdictions have held that the purpose and effect of such a clause is to provide automatic insurance coverage during the grace period, but to preclude coverage after that period unless the insured has given the necessary notification. *Id.* The court reasoned that since coverage is automatic during that thirty-day notice period it is immaterial that the insured did not notify the insurer of the new car and never paid additional premiums. *Id.* at 355. Whether notification was received by the insurer during the grace period is only material to the existence of coverage following the thirty-day notice period. *Id.*

ply to the first 30 days of coverage or cover

after 30 days of automatic coverage.

[¶ 83] In this case, the insurance clause creates a grace period to allow the insureds, Curtis and Debra Tufty, to notify AMCO of their newly acquired vehicle as a condition precedent to obtaining coverage subsequent to the thirty-day period. The Tuftys are provided with automatic insurance coverage for thirty days following the purchase of a new vehicle. Failure to notify AMCO of the purchase of their new car is immaterial to coverage during the grace period and material only to coverage extending beyond the thirty-day notice period. To hold otherwise is contrary to the weight of authority from other jurisdictions addressing the issue. *See, e.g., Barnard v. Fireman's Fund Ins. Co.*, 996 F.2d 246, 248 (10th Cir.1993); *Republic Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 527 F.2d 1002, 1003–04 (4th Cir.1975); *Hobby*, 537 N.W.2d at 230–31; *Daniels*, 868 P.2d at 354; *Swenson*, 404 N.W.2d at 879; *Nat'l Union Fire Ins. Co. v. Falciani*, 87 N.J.Super. 157, 208 A.2d 422, 430 (1965); Annot., 39 A.L.R.4th 229, § 23[a]. *But see* Annot., 39 A.L.R.4th 229, § 23[b] (jurisdictions rejecting the majority view). Furthermore, to hold otherwise frustrates the purpose behind our financial responsibility laws, that is, to provide protection for innocent third parties. *Richard v. Fliflet*, 370 N.W.2d 528, 532 (N.D.1985) (acknowledging "the Legislature's purpose in enacting our financial responsibility laws was to protect innocent victims of motor vehicle accidents from financial disaster"); *Nodak Mut. Ins. Co. v. Loeffler*, 225 N.W.2d 290, 293 (N.D.1974) (stating "[i]n construing the terms of an automobile insurance policy, it must be kept in mind that the public has an interest in having automobiles covered by liability insurance").

[¶ 84] I would follow the majority of the jurisdictions, which recognize a premium has already been paid for this thirty-day grace period and would not retroactively cancel the coverage.

[¶ 85] Although the majority opinion concludes notice that Tuftys had purchased a new vehicle was given, it determines such notice was "insufficient as a matter of law" because Debra Tufty did not specifically state: "I request coverage under the AMCO policy." The trial court, however, found "the report of the accident and conversation with the agent by Debra Tufty [on November 27, 1994,] was a request for coverage under both [the Farm and City and AMCO] policies." Under Rule 52(a), N.D.R.Civ.P., we will not set aside a trial court's findings of fact unless it is clearly erroneous. *In the Matter of the Estate of Nelson*, 553 N.W.2d 771, 773 (N.D.1996). "We give great deference to the trial court's opportunity to observe the witnesses and determine credibility." *Luna v. Luna*, 1999 ND 79, ¶ 27, 592 N.W.2d 557.

[¶ 86] An insured provides sufficient notice when the insured gives the insurer notice within the specified number of days of the acquisition of a new vehicle. 8 Russ, *Couch on Insurance, supra*, § 117:28, at 117–46 (footnotes omitted). Notice is complete so long as the insured has clearly relayed to the insurer that he or she has acquired a new vehicle. Requiring the insured to state more than was stated here, limits the application of an automatic insurance clause and is contrary to the intent of the policy. Lay persons' statements to an insurance agent regarding the acquisition of a new vehicle are intended to invoke notice to the insurer that coverage is requested.

[¶ 87] The trial court after hearing the testimony and reviewing the log entries found Debra Tufty contacted the insurance agent and stated to him that she and her husband had purchased a different vehicle for their son, Christopher, and that he had been in an accident. Her statements could reasonably be construed to request coverage under both policies. What reason would Debra Tufty have for making this phone call other than to "request coverage." She did not specifically request coverage under either policy. It was the

agent who decided which company to submit the loss to.

[¶ 88] The majority states that neither the insurance agent nor the insured had the intention of adding the Toyota as a covered vehicle under the AMCO policy. The insurance agent's log entries, however, suggest otherwise. The insurance agent maintained a file diary for both the AMCO policy and the Farm and City policy. Upon receiving the call from Debra Tufty regarding the accident, the agent made a log entry in both policy diaries. Such evidence supports the trial court's findings and indicates the insurance agent believed the Toyota would be covered as a newly acquired vehicle under both policies.

[¶ 89] The majority states the only reasonable inference to be drawn from Debra Tufty's call to the insurance agent is that she requested coverage under the Farm and City policy. I disagree. I agree with the trial court that this is not the only reasonable inference to be drawn and would affirm the trial court, who heard the testimony of the agent and obviously did not find him credible.

[¶ 90] Because I conclude that Curtis Tufty was "using" the vehicle; that the insurance policy provides automatic coverage during the grace period without regard to notice; and that the notice given, nevertheless, was sufficient to invoke coverage, I respectfully dissent. Accordingly, I would affirm the judgment of the trial court.

[¶ 91] Mary Muehlen Maring.